United States District Court
Southern District of Texas
FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

SEP 0 7 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| COASTAL ENGINEERING, INC. | § | |
| | § | CIVIL ACTION NO. **B-01-150** |
| vs. | § | |
| | § | |
| NATIONAL AMERICAN INSURANCE | § | |
| COMPANY, LIBERTY MUTUAL | § | |
| INSURANCE COMPANY, AND | § | |
| VALLEY FORGE INSURANCE | § | |
| COMPANY | § | |

## NOTICE OF REMOVAL

Defendant, Valley Forge Insurance Company ("Valley Forge"), files this Notice of Removal and, in support thereof, shows the Court as follows:

1.  <u>Removed Case.</u> On May 24, 2001, Plaintiff filed an action entitled Cause No. 2001-05-002457-C; *Coastal Engineering, Inc. v. National American Insurance Company, Liberty Mutual Insurance Company, and Valley Forge Insurance Company;* In the 197th Judicial District Court, Cameron County, Texas ("the Lawsuit").[1] Plaintiff has since amended its lawsuit on two separate occasions but has yet to serve any defendant with citation in the Lawsuit. Nevertheless, Valley Forge voluntarily filed an answer to Plaintiff's Petition on September 6, 2001.

2.  <u>Attachment of State Court Documents.</u> Pursuant to 28 U.S.C. § 1446(a), attached hereto are copies of all process, pleadings, and orders served upon Valley Forge and all pleadings and orders in the removed case. Moreover, according to Local Rule 81, an index, list of all counsel of record, and a certified copy of the docket sheet are also attached.

3.  <u>Timeliness of Removal.</u> This notice of removal is timely under 28 U.S.C. § 1446(b) because no defendant has yet to be served with a copy of the Lawsuit. Instead,

---

[1] Since its filing, the Lawsuit has been transferred to the 357th Judicial District Court and given a new suffix to the cause number, specifically 2001-05-002457-E.

NOTICE OF REMOVAL

007140.00243:123811.01

Valley Forge became aware of the filing of Plaintiff's Second Amended Original Petition, and it voluntarily answered the Lawsuit. Valley Forge removed this action within thirty days after voluntarily answering the Lawsuit.

4. <u>Joinder of Defendants.</u> Because Valley Forge is the only defendant that has voluntarily waived service and has answered the Lawsuit, no other party needs to join in this removal.

5. <u>Basis for Federal Jurisdiction.</u> The claims asserted against Valley Forge are civil actions over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.

a. At the time this action was commenced, Plaintiff was and still is a citizen of the state of Texas.

b. Valley Forge was, at the time this action was commenced, and still is, a resident of the states of Pennsylvania and Illinois because it is a corporation incorporated under the laws of the state of Pennsylvania and has its principal place of business in the state of Illinois.

c. National American Insurance Company was, at the time this action was commenced, and still is, a resident of the state of Oklahoma because it is a corporation incorporated under the laws of the state of Oklahoma and also has its principal place of business in that state.

d. Liberty Mutual Insurance Company was, at the time this action was commenced, and still is, a resident of the state of Massachusetts because it is a corporation incorporated under the laws of the state of Massachusetts and also has its principal place of business in that state.

Thus, complete diversity of citizenship exists between Plaintiff and the Defendants. The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000). The one-year limitation on removal of

diversity cases imposed by 28 U.S.C. § 1446(b) does not prevent removal because this action was commenced less than one year ago.

     6.   <u>Notice to State Court.</u>  Pursuant to 28 U.S.C. § 1446(d), Valley Forge intends to serve written notice of this removal on the state court promptly after filing this Notice of Removal.

     FOR THESE REASONS, Defendant, Valley Forge Insurance Company, hereby effectuates removal of this cause to this Court.

Respectfully submitted,

Paul J. Van Osselaer
   Federal I.D. No.  8681
   Texas State Bar No. 20451500
111 Congress Avenue, Suite 900
Austin, TX  78701
Telephone:   (512) 482-6800
Telecopier:   (512) 482-6859
**Attorney-in-Charge for Defendant**
**Valley Forge Insurance Company**

OF COUNSEL:
HUGHES & LUCE, L.L.P.
Jill M. Cronin
   Federal I.D. No. 19127
   Texas State Bar No. 00791797
111 Congress Avenue, Suite 900
Austin, Texas 78701
Telephone: (512) 482-6800
Facsimile: (512) 482-6859

## CERTIFICATE OF SERVICE

By my signature below I certify that a true and correct copy of the foregoing document was served on all counsel of record as shown below on the ___6th___ day of _September_ _____, 2001.

| | | |
|---|---|---|
| Mr. Rollins Koppel | _____ | Telecopier |
| Koppel & Associates, L.L.P. | _____ | Overnight Delivery |
| 312 East Van Buren Ave. | X____ | Certified Mail, RRR |
| P.O. Box 2878 | | |
| Harlingen, Texas 78551 | | |

_____
Jim M. Cronin

NOTICE OF REMOVAL

Page 4
007140 00243:123811.01

CildPDF – www.fastio.com

# INDEX OF MATTERS FILED WITH NOTICE OF
## REMOVAL PURSUANT TO LOCAL RULE

| | | |
|---|---|---|
| A. | Index of Matters Filed with Notice of Removal Pursuant to Local Rule | |
| B. | Plaintiff's Original Petition | (05/24/2001) |
| C. | Plaintiff's First Amended Petition | (06/01/2001) |
| D. | Order Transferring Cases | (06/12/2001) |
| E. | Plaintiff's Second Amended Petition | (06/21/2001) |
| F. | Defendant, Valley Forge Insurance Company's Original Answer | (09/06/2001) |
| G. | Docket Sheet  (Certified Copy) | |
| H. | List of Counsel of Record | |

CibiPDF - www.fastio.com

CAUSE NO. 2001-05-00 2457-C

| | | |
|---|---|---|
| COASTAL ENGINEERING, INC. | § | IN THE 197ᵗʰ DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| VS. | § | OF |
| | § | |
| NATIONAL AMERICAN INSURANCE | § | |
| COMPANY AND LIBERTY MUTUAL | § | |
| FIRE INSURANCE COMPANY | § | CAMERON COUNTY, TEXAS |

FILED 4:45 O'CLOCK __ M
AURORA DE LA GARZA DIST. CLERK

MAY 2 4 2001

DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

## PLAINTIFF'S ORIGINAL PETITION

**COASTAL ENGINEERING, INC.** (hereinafter "Coastal" or "Plaintiff") brings this action against **NATIONAL AMERICAN INSURANCE COMPANY** (hereinafter referred to as "National American") and **LIBERTY MUTUAL FIRE INSURANCE COMPANY** (hereinafter referred to as "Liberty Mutual") collectively referred to as Defendants, and for cause of action would respectfully show the Court as follows:

1.

Discovery in this action will be conducted pursuant to Discovery Level 2, Rule 190 of Texas Rules of Civil Procedure.

2.

Plaintiff, Coastal Engineering, Inc. is a Texas Corporation which has its principal office and place of business in San Benito, Cameron County, Texas.

3.

National American is an insurance company duly incorporated under the laws of the State of Oklahoma and is doing business throughout the United States and in the State of Texas where pursuant to its permit to do business it has designated **David W. McLane at 1601 Elm Street, Suite 3000, Dallas, Texas 75201** as an agent upon whom process

CutePDF - www.cutepdf.com

may be served. Liberty Mutual is an insurance company duly incorporated under the laws

of the State of Massachusetts and is doing business throughout the United States and in

the State of Texas where pursuant to its permit to do business it has designated **CT**

**Corporation System at 350 North St. Paul Street, Dallas, Texas 75201** as an agent

upon whom process may be served. This Court has venue over the present action as a

result of Plaintiff's residence in Cameron County and also as a result of the fact that

Plaintiff has contracted with National American and Liberty Mutual as its principal insurers

under commercial general liability insurance policies issued to the Plaintiff as insured by

both the Defendants. Further, the present cause of action involves an application by the

Plaintiff for a Declaratory Judgment construing Plaintiff's rights to defense and

indemnification by each of the Defendants against claims made against the Plaintiff by the

Pharr-San Juan-Alamo School District ("PSJA C.I.S.D.") and by numerous individual

Plaintiffs in the following causes of action now pending in Hidalgo County, Texas

(hereinafter referred to collectively as "the present litigation", to-wit:

1.  Cause No. C-1038-00-B; Pharr-San Juan-Alamo I.S.D. v. Turner Construction Company of Texas, et al. v. Perspectiva, et al.; In the 93rd Judicial District Court of Hidalgo County, Texas;

2.  Cause No. C-1365-00-G; Delma M. Singleterry, et al. v. Turner Construction Company of Texas, Inc. et al.; In the 370th District Court of Hidalgo County, Texas;

3.  Cause No. C-779-00-B; Cruz Alvarez, et al v. Jesus J. Ramirez, et al. Intervenors v. Turner Construction Company of Texas and D &F Industries, Inc. Defendants v. Drury South, Inc., et al; In the 93rd District Court of Hidalgo County, Texas;

4.

Copies of the most recent pleadings in the three (3) separate cases filed against the Plaintiff which are the subject matter of this Application for Declaratory Judgment are filed simultaneously herewith as Exhibits "A", "B", and "C". Plaintiff claims that it is entitled to defense and indemnification by both Defendants for "covered occurrences" as defined by these policies in each of the years 1995, 1996, 1997, 1998, and part of 1999 by Liberty Mutual pursuant to separate general liability policies for each of such years; and copies of such primary policies are filed simultaneously herewith as Exhibit "D1", "D2", "D3", "D4" and Liberty Mutual umbrella policies, copies of such policies are filed simultaneously herewith as Exhibit "E1", "E2", "E3", and "E4". The coverage for the Plaintiff between August 2, 1999 and August 2, 2000 is provided by National American's general liability policy, a copy of which is filed simultaneously herewith as the primary policy Exhibit "F" and National American's umbrella policy, a copy of such policy is filed simultaneously herewith as Exhibit "G" .

5.

National American and Liberty Mutual have agreed to share the cost in providing a defense counsel selected solely by them in the present litigation. Defendants have had excellent opportunities in the past during two (2) separate mediations to settle the ("PSJA C.I.S.D.") case, and have clearly breached their duties to exercise reasonable efforts to promote a settlement of this case. Further, the Defendants have engaged in unfair settlement practices and have breached their duty of good faith and fair dealing with the Plaintiff by refusing to be forthcoming and making reasonable offers of settlement. Instead, the Defendants have attempted to apply unfair pressure upon the Plaintiff to become a

(

self-insurer and advance settlement monies by claiming facetiously that it is not covered for the majority of occurrences which would support PSJA C.I.S.D.'s cause of action asserted against the Plaintiff. Such claim by the Defendants is not true based upon underlying facts which are well known to both Defendants.

At present, this action is limited to an action for Declaratory Judgment pursuant to §37.004 of the Texas Civil Practice and Remedies Code asking for this Court and jury to construe and determine Plaintiff's rights and remedies to which the Plaintiff is entitled by reason of its various contracts of insurance with the Defendants, in addition to Plaintiff's right to recover attorney's fees by reason of this action.

6.

The PSJA C.I.S.D. case is set for trial on June 4, 2001 and is set for mediation on May 29, 2001 and May 30, 2001 in McAllen, Texas. Both Defendants have been put on notice by the Plaintiff that an unconditional settlement offer dated May 21, 2001, has been made in writing by PSJA C.I.S.D. for Nine Million and No/100 Dollars ($9,000,000.00), which is within the policy limits of Liberty Mutual and further that the contribution of a far lesser sum by both Defendants to an overall global settlement would very likely settle the entire litigation involving PSJA C.I.S.D.

Solely in the event the Defendants are not more forthcoming in the upcoming mediation and this matter is not settled prior to trial; and in the event the Plaintiff sustains additional damages as a result of the unreasonable failure of both Defendants to exercise good faith settlement efforts and to deal in good faith with the Plaintiff regarding coverage matters, Plaintiff will amend this action, ask for actual and exemplary damages including

attorney's fees arising from bad faith settlement practices of both defendants pursuant to the Texas Insurance Code Articles 21.21 et seq.

As late as May 17, 2001, National American, acting through its coverage counsel in writing, asserted that it is National American's position "...that there may be no coverage at all for the claim" in the PSJA C.I.S.D. case; and on May 18, coverage counsel for Liberty Mutual reasserted technical defenses of exclusion relating to "damaged  property" or "impaired property" of PSJA C.I.S.D. based upon its interpretation of ambiguous language in the insurance contracts which must, as a matter of law, be interpreted in favor of Plaintiff as the insured if  more than one reasonable construction of the language is determined to exist.

Plaintiff urges that based upon any reasonable common sense interpretation of the various insurance contracts referred to herein, (and by applying  the facts which give rise to the alleged actionable conduct of the Plaintiff in the PSJA C.I.S.D. case) it should be determined that the Plaintiff has virtually 100% coverage for all damages claimed by PSJA C.I.S.D. which proximately resulted from Plaintiff's alleged conduct.

Further, Plaintiff is entitled to Judgment against the Defendants jointly and severally, for costs and expenses incurred by the Plaintiff (acting through the undersigned as individual counsel) in an effort to cause the Defendants to acknowledge the rights of the Plaintiff to indemnity pursuant to its various insurance contracts and to cause the Defendants to exert a reasonable good faith effort to settle the PSJA C.I.S.D. case.  In addition, Plaintiff is entitled  to reasonable attorney's fees and expenses incurred by the Plaintiff in this action.

Coastal Engineering, Inc. - Plaintiff's Original Petition

WHEREFORE, Plaintiff prays that, after being duly served, the Defendants appear and answer herein and that upon final trial hereof, this Court enter a Declaratory Judgment that Plaintiff is entitled to complete indemnity from Defendants for all damages which may hereafter be assessed against the Plaintiff as a result of a Final Judgment against the Plaintiff by the Pharr-San Juan-Alamo Consolidated Independent School District or by any of the individual Plaintiffs in the other cases which together constitute the present litigation referred to herein or as a result of any reasonable settlements hereinafter made by the Plaintiff in such litigation. Plaintiff further prays that it recover reasonable attorney's fees and reasonable costs incurred in connection with this action in addition to all and further relief which Plaintiff may be entitled to recover, either as law or in equity.

Respectfully submitted,

**KOPPEL & ASSOCIATES, L.L.P.**
312 East Van Buren
Post Office Box 2878
Harlingen, Texas 78551
Telephone No.: (956) 425-2000
Telecopier No.: (956) 421-4258

By:

Rollins M. Koppel
State Bar No. 11680000

Case 1:01-cv-00150   Document 1   Filed in TXSD on 09/07/2001   Page 14 of 132

# KOPPEL & ASSOCIATES, L.L.P.

SKAGGS & KOPPEL BUILDING
312 EAST VAN BUREN AVENUE
POST OFFICE BOX 2878
HARLINGEN, TEXAS 78551

ROLLINS M. KOPPEL
ALEJANDRO J. GARCIA

TELEPHONE (956) 425-2000
FACSIMILE (956) 421-4258
E-mail rollinskoppel@yahoo.com

May 24, 2001

Mrs. Aurora de la Garza                                       Via Hand Delivery
District Clerk
974 East Harrison
Brownsville, Texas 78520

2001-05-002457-C

Re:   Cause No. _____; Coastal Engineering, Inc. vs. National American
      Insurance Company and Liberty Mutual Fire Insurance Company, In the
      ____ District Court of Cameron County, Texas.

Dear Mrs. de la Garza:

      Enclosed please find Plaintiff's Original Petition and Exhibits A through F with my
check in the amount of $170.00 for the filing fee.

      It is not necessary to issue citations at present as we expect the defendants to
accept service.

      I also enclose an extra copy of this letter for you to designate the court and cause
numbers, once assigned.

      I appreciate your courtesies and cooperation.

                                            Yours very truly,

                                            Rollins M. Koppel

RMK:plm
Enclosure

5/24/01
DP ck
$170.00 CK 1043

CVISPDF – www.fastio.com

# KOPPEL & ASSOCIATES, L.L.P.

SKAGGS & KOPPEL BUILDING
312 EAST VAN BUREN AVENUE
POST OFFICE BOX 2878
HARLINGEN, TEXAS 78551

ROLLINS M. KOPPEL
ALEJANDRO J. GARCIA

TELEPHONE (956) 425-2000
FACSIMILE (956) 421-4258
E-mail: rollinskoppel@yahoo.com

June 1, 2001

FILED _____ O'CLOCK ____ M
AURORA DE LA GARZA DIST. CLERK

JUN 0 1 2001

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

Mrs. Aurora de la Garza
District Clerk
974 East Harrison
Brownsville, Texas 78520

RE:   *Coastal Engineering v. National American Insurance Co, et al.*; Cause Number 2001-05-002457-C, In the 197th Judicial District Court of Cameron County, Texas

Dear Aurora:

Enclosed please find an original and four copies of Plaintiff's First Amended Original Petition and Exhibits "H" and "I."

Citations were not requested when Plaintiff's Original Petition was filed. Thus, please issue citations for the following Defendants as follows:

National American Insurance Company
by serving its agent for service of process,
David W. McLane
1601 Elm Street, Suite 3000
Dallas, Texas 75201

Liberty Mutual Fire Insurance Company
by serving its agent for service of process,
CT Corporation System
350 North St. Paul Street
Dallas, Texas 75201

Valley Forge Insurance Company
by serving its agent for service of process,
CT Corporation System
350 North St. Paul Street
Dallas, Texas 75201

Once the citations have been issued, please return them to our office so we may have them served on said Defendant, along with a copy of Plaintiff's First Amended Original Petition attached

thereto, all as authorized by Rule 106, Texas Rules of Civil Procedure.

Your assistance and cooperation in this matter is greatly appreciated.

Sincerely,

Alejandro J. Garcia

AJG:pm
Enclosures

## CAUSE NO. 2001-05-002457-C

| | | |
|---|---|---|
| **COASTAL ENGINEERING, INC.** | § | **IN THE 197th DISTRICT COURT** |
| | § | |
| | § | |
| | § | |
| **VS.** | § | **OF** |
| | § | |
| **NATIONAL AMERICAN INSURANCE** | § | |
| **COMPANY, LIBERTY MUTUAL FIRE** | § | |
| **INSURANCE COMPANY AND VALLEY** | § | |
| **FORGE INSURANCE COMPANY** | § | **CAMERON COUNTY, TEXAS** |

FILED _____ O'CLOCK ____ M
AURORA DE LA GARZA DIST. CLERK

JUN 0 1 2001

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

### PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

**COASTAL ENGINEERING, INC.** (hereinafter "Coastal" or "Plaintiff") brings this action against **NATIONAL AMERICAN INSURANCE COMPANY** (hereinafter referred to as "National American"), **LIBERTY MUTUAL FIRE INSURANCE COMPANY** (hereinafter referred to as "Liberty Mutual"), and **VALLEY FORGE INSURANCE COMPANY** (hereinafter referred to as "Valley Forge"), collectively referred to as Defendants, and for cause of action would respectfully show the Court as follows:

1.

Discovery in this action will be conducted pursuant to Discovery Level 2, Rule 190 of Texas Rules of Civil Procedure.

2.

Plaintiff, Coastal Engineering, Inc. is a Texas Corporation which has its principal office and place of business in San Benito, Cameron County, Texas.

3.

National American is an insurance company duly incorporated under the laws of the State of Oklahoma and is doing business throughout the United States and in the State of

Texas where pursuant to its permit to do business it has designated **David W. McLane at 1601 Elm Street, Suite 3000, Dallas, Texas 75201** as an agent upon whom process may be served.

Liberty Mutual is an insurance company duly incorporated under the laws of the State of Massachusetts and is doing business throughout the United States and in the State of Texas where pursuant to its permit to do business it has designated **CT Corporation System at 350 North St. Paul Street, Dallas, Texas 75201** as an agent upon whom process may be served.

Valley Forge is an insurance company duly incorporated under the laws of the State of Pennsylvania and is doing business throughout the United States and in the State of Texas where pursuant to its permit to do business it has designated **CT Corporation System at 350 North St. Paul Street, Dallas, Texas 75201** as an agent upon whom process may be served.

This Court has venue over the present action as a result of Plaintiff's residence in Cameron County and also as a result of the fact that Plaintiff has contracted with National American, Liberty Mutual and Valley Forge as its principal insurers under commercial general liability insurance policies issued to the Plaintiff as insured by all the Defendants.

4.

The present cause of action involves an application by the Plaintiff for a Declaratory Judgment construing Plaintiff's rights to defense and indemnification by each of the Defendants against claims made against the Plaintiff by the Pharr-San Juan-Alamo School District ("PSJA C.I.S.D.") and by numerous individual plaintiffs in the following causes of

action now pending in Hidalgo County, Texas (hereinafter referred to collectively as "the present litigation", to-wit:

1. Cause No. C-1038-00-B; Pharr-San Juan-Alamo I.S.D. v. Turner Construction Company of Texas, et al. v. Perspectiva, et al.; In the 93rd Judicial District Court of Hidalgo County, Texas;

2. Cause No. C-1365-00-G; Delma M. Singleterry, et al. v. Turner Construction Company of Texas, Inc. et al.; In the 370th District Court of Hidalgo County, Texas;

3. Cause No. C-779-00-B; Cruz Alvarez, et al v. Jesus J. Ramirez, et al. Intervenors v. Turner Construction Company of Texas and D &F Industries, Inc. Defendants v. Drury South, Inc., et al; In the 93rd District Court of Hidalgo County, Texas;

Copies of the most recent pleadings in the three (3) separate cases filed against the Plaintiff which are the subject matter of this application for Declaratory Judgment were filed simultaneously with Plaintiff's Original Petition as Exhibits "A", "B", and  "C" and incorporated herein by reference.  Plaintiff claims that it is entitled to defense and indemnification by all of the Defendants for "covered occurrences" as defined by these policies in each of the years 1995, 1996, 1997, 1998, and part of 1999 by Liberty Mutual pursuant to separate general liability  policies for each of such years; and copies of such primary policies were filed simultaneously with Plaintiff's Original Petition as Exhibits "D1", "D2", "D3", "D4" and are incorporated herein by reference.  Copies of Liberty Mutual umbrella policies were filed simultaneously with Plaintiff's Original Petition as Exhibits "E1", "E2", "E3", and "E4" and are incorporated herein by reference.

The coverage for the Plaintiff between August 2, 1999 and August 2, 2000 is provided by National American's general liability policy and umbrella policy, copies of which

were filed simultaneously with Plaintiff's Original Petition as Exhibits "F" and "G" respectively, and are incorporated herein by reference.

The coverage for the Plaintiff between August 2, 2000 and August 2, 2001 is provided by Valley Forge's general liability policy and umbrella policy, copies of which are being filed simultaneously herewith as Exhibits "H" and "I" and are incorporated herein by reference.

5.

The PSJA C.I.S.D. case is set for trial on June 4, 2001, and the most recent mediation was conducted on May 29, 2001 and May 30, 2001 in McAllen, Texas. National American and Liberty Mutual have agreed to share the cost in providing a defense counsel selected solely by them in the present litigation. All Defendants have had excellent opportunities in the past during two (2) separate mediations to settle the PSJA C.I.S.D. case, and have clearly breached their duties to exercise reasonable efforts to promote a settlement of this case. Further, all the Defendants have engaged in unfair settlement practices and have breached their duty of good faith and fair dealing with the Plaintiff by refusing to be forthcoming and make reasonable offers of settlement. Instead, the Defendants have attempted to apply unfair pressure upon the Plaintiff to become a self-insurer and advance settlement monies by claiming facetiously that Plaintiff is not covered for the majority of occurrences which would support the various claims asserted against the Plaintiff in the underlying litigation. Such claim by the Defendants is not true based upon underlying facts which are well known to all Defendants.

All Defendants have been put on notice by the Plaintiff that an unconditional

settlement offer dated May 21, 2001, has been made in writing by PSJA C.I.S.D. for nine million dollars ($9,000,000), which is within the policy limits of Liberty Mutual, and an unconditional settlement offer of five million dollars ($5,000,000) was made verbally by the lead counsel for PSJA C.I.S.D. on May 30, 2001, and further that the contribution of a far lesser sum by all Defendants to an overall global settlement would very likely have settled the entire litigation involving PSJA C.I.S.D. at the recent mediation.

The Defendants, in response to the above offers, refused to counter with any significant counter-offer to PSJA C.I.S.D.'s five million dollar demand during the mediation and refused to participate in a reasonable manner in a proposed global settlement knowing that the threat of the PSJA C.I.S.D. lawsuit to the Plaintiff was far greater than PSJA C.I.S.D.'s settlement demand. As a result of the unreasonable failure of all Defendants to exercise good faith settlement efforts and to deal in good faith with the Plaintiff regarding coverage matters, Plaintiff is entitled to be completely indemnified by the Defendants, jointly and severally, for the total amount of any judgment which may ultimately be rendered against it by the court in the PSJA C.I.S.D. case.

6.

At present, this action is limited to an action for Declaratory Judgment pursuant to section 37.001 et seq. of the Texas Civil Practice and Remedies Code asking for this Court and jury to construe and determine Plaintiff's rights and remedies to which the Plaintiff is entitled by reason of its various contracts of insurance with the Defendants, in addition to Plaintiff's right to recover attorney's fees by reason of this action.

As late as May 30, 2001, all three of the Defendants have continued to assert that

Coastal Engineering, Inc. - Plaintiff's First Amended Original Petition                    Page 5

there is either "no coverage" or very little coverage provided by their respective insurance policies for the property damages claimed by the plaintiffs in the PSJA C.I.S.D. case based upon their interpretations of ambiguous language in the insurance contracts which must, as a matter of law, be interpreted in favor of Plaintiff as the insured if more than one reasonable construction of the language is determined to exist.

Plaintiff urges that based upon any reasonable common sense interpretation of the various insurance contracts referred to herein, (and by applying the facts which give rise to the alleged actionable conduct of the Plaintiff in the PSJA C.I.S.D. case) Plaintiff is entitled to virtually 100% coverage for all damages claimed by PSJA C.I.S.D. which proximately resulted from Plaintiff's alleged conduct and Plaintiff is further entitled to be indemnified by the Defendants jointly and severally for the total amount of any judgment which may be rendered against it in the PSJA C.I.S.D. case even if the same exceeds the policy limits of each of the Defendants based upon the failure of the Defendants to settle the case for an amount well within the policy limits when such settlement should have been made in discharge of the Defendants' fiduciary obligations to the Plaintiff.

Further, Plaintiff is entitled to a declaratory judgment against the Defendants jointly and severally, for costs and expenses incurred by the Plaintiff (acting through the undersigned as individual counsel) in an effort to cause the Defendants to acknowledge the rights of the Plaintiff to indemnity pursuant to its various insurance contracts and to cause the Defendants to exert a reasonable good faith effort to settle the PSJA C.I.S.D. case.

Based upon the Defendants' conduct in the past as herein specifically set forth,

Plaintiff is further entitled to recover from the Defendants, jointly and severally, actual and exemplary damages and attorneys' fees arising from direct dealings with the Plaintiff pursuant to the Texas Insurance Code Articles 21.21 et seq.

<div align="center">7.</div>

WHEREFORE, Plaintiff prays that, after being duly served, the Defendants appear and answer herein and that upon final trial hereof, this Court enter a Declaratory Judgment that Plaintiff is entitled to complete indemnity from Defendants for all damages which may hereafter be assessed against the Plaintiff as a result of a final judgment against the Plaintiff by the Pharr-San Juan-Alamo Consolidated Independent School District or by any of the individual plaintiffs in the other cases which together constitute the underlying litigation referred to herein or as a result of any reasonable settlements hereinafter made by the Plaintiff in such litigation. Plaintiff further prays that it recover reasonable attorney's fees and reasonable costs incurred in connection with this action in addition to all and further relief which Plaintiff may be entitled to recover, either as law or in equity.

Respectfully submitted,

**KOPPEL & ASSOCIATES, L.L.P.**
312 East Van Buren
Post Office Box 2878
Harlingen, Texas 78551
Telephone No.: (956) 425-2000
Telecopier No. (956) 421-4258

By:_____
        Rollins M. Koppel
        State Bar No. 11680000



CNA Plaza
Chicago, Illinois 60685

 

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

6.  FORMS AND ENDORSEMENTS APPLICABLE AT TIME OF ISSUANCE:            PREMIUM

        SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS
                                                                $
                                                                $
                                                                $
                                                                $
                                                                $

7.  YEAR IN TRANSITION PROGRAM:  0

8.  PREMIUM FOR THIS COVERAGE PART:  PREMIUM PAYABLE AT INCEPTION $   5499.00

9.  THESE DECLARATIONS AND THE GENERAL DECLARATIONS, IF APPLICABLE, TOGETHER
    WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSE-
    MENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED
    POLICY.

COUNTERSIGNED_____        BY _____
              DATE                        AUTHORIZED AGENT

P-55170-A (1/86 ED.)

CutePDF - www.tellus.com

 

CNA Plaza
Chicago, Illinois 60685

**For All the Commitments You Make**

NEW DECLARATION.

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00  08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE TX  78526 |

GENERAL LIABILITY SCHEDULE

THE ADDITIONAL DECLARATIONS AND SCHEDULE BELOW ARE AN EXTENSION OF THOSE ISSUED
IN CONNECTION WITH COMMERCIAL GENERAL LIABILITY INSURANCE.

LIMITS OF INSURANCE

| | | | |
|---|---|---|---|
| EACH OCCURRENCE LIMIT | $ REFER TO | | |
| PERSONAL & ADVERTISING INJURY LIMIT | $ DECLAR- | | |
| MEDICAL EXPENSE LIMIT | $ ATION | ANY ONE PERSON | |
| FIRE DAMAGE LIMIT | $ | ANY ONE FIRE | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ | | |
| GENERAL AGGREGATE LIMIT | $ | | |
| (OTHER THAN PRODUCTS-COMPLETED OPERATIONS) | | | |

SCHEDULE

| DESCRIPTION OF HAZARDS (AND LOCATION IF DIFFERENT FROM ADDRESS SHOWN IN ITEM 1 OF DECLARATIONS) | CODE NO. | PREMIUM BASES AS DESCRIBED IN THE SCHEDULE | RATES PROPERTY DAMAGE & BODILY INJURY | ADVANCE PREMIUMS PROPERTY DAMAGE & BODILY INJURY |
|---|---|---|---|---|
| PREMISES\OPERATIONS | | * (A)<br>* (P)<br>* (S) | ** (A)<br>** (P)<br>** (S) | |
| LOCATION 001 | | | | |
| PLUMBING - COMMERCIAL AND INDUSTRIAL | 98482 | IF ANY<br>(P ) | 41.986 | INCL |
| LOCATION 003 | | | | |
| BUILDINGS OR PREMISES-OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISK ONLY) OTHER THAN NOT FOR PROFIT INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS | 61212 | 2,969<br>(A ) | 43.502 | 129 |

Edward L. Hagelwary
Chairman of the Board

John Kerton
Secretary

INSURED



CNA Plaza
Chicago, Illinois 60685

**For All the Commitments You Make**

NEW DECLARATION

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00  08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

| DESCRIPTION OF HAZARDS (AND LOCATION IF DIFFERENT FROM ADDRESS SHOWN IN ITEM 1 OF DECLARATIONS) | CODE NO. | PREMIUM BASES AS DESCRIBED IN THE SCHEDULE | RATES PROPERTY DAMAGE & BODILY INJURY | ADVANCE PREMIUMS PROPERTY DAMAGE & BODILY INJURY |
|---|---|---|---|---|
| PRODUCTS/COMPLETED OPERATIONS | | * (P)<br>* (S) | ** (P)<br>** (S) | |
| LOCATION 001<br>CONTRACTORS - SUBCONTRACTED WORK - IN CONNECTION WITH CONSTRUCTION, RECONSTRUCTION, REPAIR OR ERECTION OF BUILDINGS | 91585 | 4,400,000 (C ) | 0.674 | 2,966 |
| CARPENTRY | 91342 | IF ANY (P ) | 6.756 | INCL |
| ELECTRICAL WORK - WITHIN BUILDINGS | 92478 | IF ANY (P ) | 6.751 | INCL |
| | | | TOTAL | INCL |

| * PREMIUM BASES | ** RATES |
|---|---|
| (A) = AREA | (A) = PER 1,000 SQUARE FEET OF AREA |
| (P) = PAYROLL | (P) = PER $1,000 OF PAYROLL |
| (S) = GROSS SALES | (S) = PER $1,000 OF GROSS SALES |

P-55172-A (1/86 ED.)

Bernard L. Hughesburgh
Chairman of the Board

John Kurtz
Secretary

INSURED

CNAPDF - www.texis.com

 **CNA**
*For All the Commitments You Make*

CNA Plaza
Chicago, Illinois 60685



DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00   08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

ITEM

2. POLICY PERIOD:  THIS POLICY BECOMES EFFECTIVE AND EXPIRES AT 12:01 A.M.
STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS
CONTAINED HEREIN, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED.

3. AUDIT PERIOD IS ANNUAL, UNLESS OTHERWISE STATED.

4. LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 1000000 | |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ 1000000 | |
| MEDICAL EXPENSE LIMIT | $ 5000 | ANY ONE PERSON |
| FIRE DAMAGE LIMIT | $ 50000 | ANY ONE FIRE |
| PRODUCTS-COMPLETED OPERATIONS<br>AGGREGATE LIMIT | $ 2000000 | |
| GENERAL AGGREGATE LIMIT (OTHER THAN<br>PRODUCTS-COMPLETED OPERATIONS) | $ 2000000 | |

5. NAMED INSURED IS:
(  ) INDIVIDUAL     (  ) JOINT VENTURE     (  ) PARTNERSHIP
( X ) CORPORATION
(  ) OTHER

BUSINESS DESCRIPTION:
COMMERCIAL SUBCONTRACTOR

LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:

SEE ATTACHED SCHEDULE

*Bernard L. Hengelsberg*
Chairman of the Board

*Jonathan Kantor*
Secretary

INSURED

 

CNA Plaza
Chicago, Illinois 60685

**For All the Commitments You Make**

NEW DECLARATION

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

## GENERAL LIABILITY SCHEDULE

THE ADDITIONAL DECLARATIONS AND SCHEDULE BELOW ARE AN EXTENSION OF THOSE ISSUED
IN CONNECTION WITH COMMERCIAL GENERAL LIABILITY INSURANCE.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ REFER TO | |
| PERSONAL & ADVERTISING INJURY LIMIT | $ DECLAR- | |
| MEDICAL EXPENSE LIMIT | $ ATION | ANY ONE PERSON |
| FIRE DAMAGE LIMIT | $ | ANY ONE FIRE |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ | |
| GENERAL AGGREGATE LIMIT | $ | |
| (OTHER THAN PRODUCTS-COMPLETED OPERATIONS) | | |

### SCHEDULE

| DESCRIPTION OF HAZARDS<br>(AND LOCATION IF DIFFERENT<br>FROM ADDRESS SHOWN IN ITEM<br>1 OF DECLARATIONS) | CODE<br>NO. | PREMIUM<br>BASES AS<br>DESCRIBED<br>IN THE<br>SCHEDULE | RATES<br><br>PROPERTY<br>DAMAGE<br>& BODILY<br>INJURY | ADVANCE PREMIUMS<br><br>PROPERTY<br>DAMAGE<br>& BODILY<br>INJURY |
|---|---|---|---|---|
| PREMISES\OPERATIONS | | * (A)<br>* (P)<br>* (S) | ** (A)<br>** (P)<br>** (S) | |
| LOCATION 001<br>CONTRACTORS - SUBCONTRACTED<br>WORK - IN CONNECTION WITH<br>CONSTRUCTION, RECONSTRUCTION,<br>REPAIR OR ERECTION OF<br>BUILDINGS | 91585 | 4,400,000<br>(C ) | 0.522 | 2,297 |
| CARPENTRY | 91342 | IF ANY<br>(P ) | 36.954 | INCL |
| ELECTRICAL WORK - WITHIN<br>BUILDINGS | 92478 | IF ANY<br>(P ) | 19.207 | INCL |

Bernard L. Hughsburgh
Chairman of the Board

John Kenton
Secretary



CNA Plaza
Chicago, Illinois 60685

**For All the Commitments You Make**

NEW DECLARATION

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00  08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

## GENERAL LIABILITY SCHEDULE

THE ADDITIONAL DECLARATIONS AND SCHEDULE BELOW ARE AN EXTENSION OF THOSE ISSUED
IN CONNECTION WITH COMMERCIAL GENERAL LIABILITY INSURANCE.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ REFER TO | |
| PERSONAL & ADVERTISING INJURY LIMIT | $ DECLAR- | |
| MEDICAL EXPENSE LIMIT | $ ATION | ANY ONE PERSON |
| FIRE DAMAGE LIMIT | $ | ANY ONE FIRE |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ | |
| GENERAL AGGREGATE LIMIT<br>(OTHER THAN PRODUCTS-COMPLETED OPERATIONS) | $ | |

### SCHEDULE

| DESCRIPTION OF HAZARDS (AND LOCATION IF DIFFERENT FROM ADDRESS SHOWN IN ITEM 1 OF DECLARATIONS) | CODE NO. | PREMIUM BASES AS DESCRIBED IN THE SCHEDULE | RATES<br>PROPERTY DAMAGE & BODILY INJURY | ADVANCE PREMIUMS<br>PROPERTY DAMAGE & BODILY INJURY |
|---|---|---|---|---|
| PREMISES\OPERATIONS | | * (A)<br>* (P)<br>* (S) | ** (A)<br>** (P)<br>** (S) | |
| LOCATION 007<br>DWELLINGS - ONE FAMILY<br>(LESSOR'S RISK ONLY) INCLUDING<br>PRODUCTS AND/OR COMPLETED<br>OPERATIONS | 63010 | 1<br>(DW) | 56.087 | 56 |
| LOCATION 008<br>DWELLINGS - ONE FAMILY<br>(LESSOR'S RISK ONLY) INCLUDING<br>PRODUCTS AND/OR COMPLETED<br>OPERATIONS | 63010 | 1<br>(DW) | 51.336 | 51 |

Bernard L. Hughabaugh
*Chairman of the Board*

Jordan Kenton
*Secretary*



CNA Plaza
Chicago, Illinois 60685

For All the Commitments You Make™

NEW DECLARATION

| Policy Number | From | Policy Period | To | Coverage is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX 78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE TX 78526 |

| DESCRIPTION OF HAZARDS (AND LOCATION IF DIFFERENT FROM ADDRESS SHOWN IN ITEM 1 OF DECLARATIONS) | CODE NO. | PREMIUM BASES AS DESCRIBED IN THE SCHEDULE | RATES PROPERTY DAMAGE & BODILY INJURY | ADVANCE PREMIUMS PROPERTY DAMAGE & BODILY INJURY |
|---|---|---|---|---|
| PRODUCTS/COMPLETED OPERATIONS | | * (P)<br>* (S) | ** (P)<br>** (S) | |
| | | | TOTAL | 5,499 |

*
PREMIUM BASES

(A) = AREA

(P) = PAYROLL

(S) = GROSS SALES

**
RATES

(A) = PER 1,000 SQUARE FEET OF AREA

(P) = PER $1,000 OF PAYROLL

(S) = PER $1,000 OF GROSS SALES

P-55172-A (1/86 ED.)

Bernard L. Hengsbach
Chairman of the Board

John Kanton
Secretary



**CNA**
For All the Commitments You Make

CNA Plaza
Chicago, Illinois 60685

NEW DECLARATION

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX   78526 |

LIABILITY COVERAGE SCHEDULE OF INSURED LOCATIONS

LOC. NO.    LOCATION STREET ADDRESS, CITY AND STATE

001      185-187 N. TRAVIS ; SAN BENITO , TX 78586

003      225 W. STENGER ST ; SAN BENITO , TX 78586

007      208 W HOUSTON ST ; SOUTH PADRE , TX 78597

008      1913 LAUREL DR ; HARLINGEN , TX 78550

P 55738 A 01/86

Bernard L. Hengesbach
Chairman of the Board

John Keaton
Secretary



**CNA**
For All the Commitments You Make

CNA Plaza
Chicago, Illinois 60685

NEW DECLARATION

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00   08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

| DESCRIPTION OF HAZARDS<br>(AND LOCATION IF DIFFERENT<br>FROM ADDRESS SHOWN IN ITEM<br>1 OF DECLARATIONS) | CODE<br>NO. | PREMIUM<br>BASES AS<br>DESCRIBED<br>IN THE<br>SCHEDULE | RATES<br>PROPERTY<br>DAMAGE<br>& BODILY<br>INJURY | ADVANCE PREMIUMS<br>PROPERTY<br>DAMAGE<br>& BODILY<br>INJURY |
|---|---|---|---|---|
| PRODUCTS/COMPLETED OPERATIONS | | * (P)<br>* (S) | ** (P)<br>** (S) | |
| LOCATION 001<br>PLUMBING - COMMERCIAL AND<br>INDUSTRIAL | 98482 | IF ANY<br>(P ) | 12.451 | INCL |
| | | TOTAL | INCL | |

| * PREMIUM BASES | ** RATES |
|---|---|
| (A) = AREA | (A) = PER 1,000 SQUARE FEET OF AREA |
| (P) = PAYROLL | (P) = PER $1,000 OF PAYROLL |
| (S) = GROSS SALES | (S) = PER $1,000 OF GROSS SALES |

P-55172-A (1/86 ED.)

Edward L. Hagelsweiy
Chairman of the Group

John Kuton
Secretary

 

**CNA**
*For All the Commitments You Make*

CNA Plaza
Chicago, Illinois 60685

| Policy Number | From | Policy Period | To | Coverage is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

**Named Insured And Address**

COASTAL ENGINEERING INC
P O BOX 893
SAN BENITO, TX  78586

**Agent**

HUGHSTON INSURANCE AGENCY INC
46 COVE CIRCLE
P.O. BOX 8550
BROWNSVILLE  TX  78526

POLICY FORMS AND ENDORSEMENTS SCHEDULE

FORM NUMBER          FORM TITLE

*** LIABILITY FORMS AND ENDORSEMENTS ***
P55172A      01/86    Commercial General Liability Schedule
CG0001       10/93    Commercial General Liability Coverage Form
CG0103       10/93    Texas Changes - Conditions Requiring Notice
CG0205       11/85    TX Changes-Amend Cancellation Prov or Cov Change
CG2404       11/85    Waiver-Trans Rights Recovery Against Others To Us
CG2503       11/85    Amendment-Aggregate Limits of Ins (Per Project)
CG2639       01/95    TX Changes-Employment-Related Practices Exclusion
G124574A     03/97    Important Information
G129960A00   06/98    Important Information
G132259A42   07/98    General Liaiblity Policyholders notice -TX
G134809A     05/99    Important Information
G134814A     07/99    Important Information
G17957F42    04/98    Contractors Blanket Additional Insured Endorsement
G55157B      02/88    Premium Bases
IL0017       11/98    Common Policy Conditions
IL0021       11/85    Nuclear Energy Liability Exclusion Endorsement
IL0168       09/92    Texas Changes - Duties
IL0275       06/95    Texas Changes - Cancellation and Nonrenewal
923221A      05/89    Exclusion - Asbestos

*** PLEASE READ THE ENCLOSED IMPORTANT NOTICES CONCERNING YOUR POLICY: ***
G53752D42H      /      Important Information for Texas Policyholders

P 55738 A  01/86

Chairman of the Board

Secretary

CNAPDF - www.fasios.com

CG 00 01 10 93

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      **(2)** The "bodily injury" or "property damage" occurs during the policy period.

   **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. **Exclusions.**

   This insurance does not apply to:

   **a. Expected or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   **b. Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      **(1)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      **(2)** That the insured would have in the absence of the contract or agreement.

   **c. Liquor Liability**

   "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      **(1)** Causing or contributing to the intoxication of any person;

      **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   **d. Workers Compensation and Similar Laws**

   Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

   **e. Employer's Liability**

   "Bodily injury" to:

      **(1)** An "employee" of the insured arising out of and in the course of:

         **(a)** Employment by the insured; or

         **(b)** Performing duties related to the conduct of the insured's business; or

      **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

CG 00 01 10 93                    Copyright, Insurance Services Office, Inc., 1992

rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental

physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section **III**).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement.**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION **III**); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

Copyright, Insurance Services Office, Inc., 1992

paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   **a.** Your "employees," other than your "executive officers," but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

   **(1)** "Bodily injury" or "personal injury":

   **(a)** To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

   **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

   **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

   **(d)** Arising out of his or her providing or failing to provide professional health care services.

   **(2)** "Property damage" to property:

   **(a)** Owned, occupied or used by,

   **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

   **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)** With respect to liability arising out of the maintenance or use of that property; and

   **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

       Copyright, Insurance Services Office, Inc., 1992

means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)** That is Fire insurance for premises rented to you; or

**(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of

insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

Copyright, Insurance Services Office, Inc., 1992

CRAPDF - www.fineloa.com

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**10.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading and unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**11.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**14. a.** "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

**b.** "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

Copyright, Insurance Services Office, Inc., 1992




MERCIAL GENERAL LIABILITY
CG 01 03 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CONDITIONS REQUIRING NOTICE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With regard to Bodily Injury and Property Damage Liability, unless we are prejudiced by the insured's or your failure to comply with the requirement, any provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will not bar coverage under this Coverage Part.

CG 01 03 10 93                    Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER:  CG 24 04 11 85

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER RIGHTS OF RECOVERY AGAINST OTHERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

"BLANKET AS REQUIRED BY
WRITTEN CONTRACT"

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

We waive any right of recovery we may have against the person or organization shown in the Schedule because of payments we make for injury or damage arising out of "your work" done under a contract with that person or organization. The waiver applies only to the person or organization shown in the Schedule.

     Copyright, Insurance Services Office, Inc., 1984





MERCIAL GENERAL LIABILITY
CG 26 39 01 95

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion. demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)** or **(c)** above is directed.

Copyright, Insurance Services Office, Inc., 1994



G-17957-F42
(Ed. 04/98)

**For All the Commitments You Make**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTOR'S BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy under a written contract or agreement but the written contract or agreement must be:

    **1.** Currently in effect or becoming effective during the term of this policy; and

    **2.** Executed prior to the "bodily injury," "property damage," "personal injury" or "advertising injury."

**B.** The insurance provided to the additional insured is limited as follows:

    **1.** That person or organization is only an additional insured with respect to liability arising out of:

        **a.** Your premises;

        **b.** "Your work" for that additional insured; or

        **c.** Acts or omissions of the additional insured in connection with the general supervision of "your work."

    **2.** The Limits of Insurance applicable to the additional insured are those specified in the written contract or agreement or in the Declarations for this policy, whichever is less. These Limits of Insurance are inclusive and not in addition to the Limits of Insurance shown in the Declarations.

    **3.** Except when required by contract or agreement, the coverage provided to the additional insured by this endorsement does not apply to:

        **a.** "Bodily injury" or "property damage" occurring after:

            **(1)** All work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured at the site of the covered operations has been completed; or

            **(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

        **b.** "Bodily injury" or "property damage" arising out of acts or omissions of the additional insured other than in connection with the general supervision of "your work."

    **4.** The insurance provided to the additional insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including:

        **a.** The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

        **b.** Supervisory, or inspection activities performed as part of any related architectural or engineering activities.

**C.** As respects the coverage provided under this endorsement, Paragraph **4.b. SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended with the addition of the following:

    **4. Other Insurance**

        **b. Excess Insurance**

        This insurance is excess over:

        Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be either primary or primary and noncontributing. Where required by contract, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with this insurance.

**CNA**
*For All the Commitments You Make*

9-23221-A
(Ed. 05/89)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE FORM
FARM COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

This insurance does not apply to:

**(1)** "Bodily injury", "property damage" or "advertising injury" arising out of the actual, alleged or threatened exposure at any time to asbestos; or

**(2)** Any loss, cost or expense that may be awarded or incurred:

    **(a)** by reason of a claim or "suit" for any such injury or damage; or

    **(b)** in complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of asbestos.

Asbestos means the mineral in any form whether or nor the asbestos was at any time:

**(1)** airborne as a fiber, particle or dust;

**(2)** contained in or formed a part of a product, structure or other real or personal property;

**(3)** carried on clothing;

**(4)** inhaled or ingested; or

**(5)** transmitted by any other means.

Accepted by:

_____
Authorized Representative

_____
Title

_____
Date

9-23221-A
(Ed. 05/89)

Page 1 of 1



**For All the Commitments You Make**

# IMPORTANT INFORMATION

## FROM THE MEMBER COMPANIES OF CNA INSURANCE (CNA)

A Year 2000 And Other Date-Related Computer Problems Exclusion Endorsement has been added to your General Liability Coverage. This Year 2000 and Other Date-Related Computer Problems Exclusion Endorsement excludes coverage for all loss, cost, expense or damage directly or indirectly based on, or arising out of or related to a date-related computer problem. It was not CNA's intent to provide liability coverage for the kinds of damages most likely to be alleged as a result of date-related computer failure, for example, economic losses or the costs of modifying computer equipment or data. The Year 2000 And Other Date-Related Computer Problems Exclusion has been added to your policy to further clarify coverage and help avoid any misunderstanding at the time of loss.



**CNA**

*For All the Commitments You Make*

# IMPORTANT INFORMATION

## TO OUR GENERAL LIABILITY POLICYHOLDERS DOING BUSINESS IN THE STATE OF TEXAS

As your general liability insurance carrier, we encourage you to take steps to provide a safe and healthy facility and premises for the general public. While CNA cannot assume this responsibility, we can assist you with the following services:

1. Surveys of your premises to identify actual or potential areas of loss;

2. Recommendations based on said surveys;

3. Evaluation of your liability accident prevention program;

4. Training of supervisory personnel;

5. Consultation on Loss Control technical problems and/or questions;

6. Analysis of previous accidents;

7. Industrial Hygiene services;

8. Accident prevention materials including safety bulletins, posters and training aids.

The above services are available to our policyholders at no additional charge and shall be provided upon request directly to the policyholder. We have professional resources available to assist you or can provide support material for your continuing accident prevention efforts. If you would like more information on our commercial vehicle safety and management programs, please call or write

CNA Insurance Companies
Attn: Loss Control
Plaza of the Americas
600 N. Pearl Street
Dallas, Texas 75201
(214) 220-1300

Again, if you have any questions or would like to discuss these services, please give us a call at the phone number listed above.

G-132259-A42
(Ed. 07/98)

Page 1 of 1



*For All the Commitments You Make*

# IMPORTANT INFORMATION

## FROM THE MEMBER COMPANIES OF CNA INSURANCE
## (CNA)

An Asbestos Exclusion Endorsement has been added to your General Liability Coverage. This Asbestos Exclusion Endorsement excludes coverage for Bodily Injury, Property Damage, Personal Injury and Advertising Injury arising out of the actual, alleged or threatened exposure to asbestos; or any loss, cost or expense that may be awarded or incurred: by reason of a claim or suit for any such injury or damage or in complying with a governmental directive to test for, monitor, clean up, remove, contain or dispose of asbestos.

It was not CNA's intent to provide liability coverage for asbestos related injuries or losses. The Asbestos Exclusion has been added to your policy to further clarify coverage and help avoid any misunderstanding at the time of loss.





**For All the Commitments You Make**

G-129948-A
(Ed. 03/98)

## THIS ENDORSEMENT IS ADDED TO THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF COVERAGE FOR DATE-RELATED COSTS

This endorsement applies to insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay any costs or expenses you or others directly or indirectly incur to:

1. Assess, design, identify, inspect, install, maintain, modify, monitor, rectify, repair, replace, reprogram or test any equipment, systems, software, or any components thereof, as described in Section **B.** of this endorsement:

   **a.** Because of the manner in which such equipment, systems, software, or any components thereof recognize, interpret, process or differentiate dates or times, or are unable to recognize, interpret, process or differentiate dates or times; or

   **b.** In anticipation of the manner in which such equipment, systems, software, or any components thereof may recognize, interpret, process or differentiate dates or times, or may be unable to recognize, interpret, process or differentiate dates or times; or

2. Obtain advice or consultation with respect to **A.1.** above.

   Without limiting the breadth or scope of the foregoing, one example of the type of cost or expense excluded hereunder is any cost or expense to modify or test equipment, systems, software, or any components thereof, because of the manner in which they recognize, interpret, process or differentiate, dates or times as a consequence of the date change from 1999 to 2000.

**B.** Equipment, systems, software, or any components thereof include, but are not limited to, the following, whether belonging to any insured or to others:

1. Computer hardware;

2. Computer software;

3. Computer firmware meaning computer programs contained in a hardware device as a read-only memory;

4. Computer operating systems and related software;

5. Computer networks;

6. Microprocessors or micro chips, whether or not part of any computer or computerized system;

7. Any other computerized or electronic equipment, components or circuitry; or

8. Any other products, equipment, services, data or functions that directly or indirectly incorporate, use or rely upon, in any manner, any of the items listed in paragraph **B.1.** through **B.7.** above.

**C.** With respect to any insurance provided for loss of Business Income or Extra Expense, we will not pay for any loss or expense directly or indirectly incurred due to the period of time required to:

1. Assess, design, identify, inspect, install, maintain, modify, monitor, rectify, repair, replace, reprogram or test any equipment, systems, software, or any components thereof, as described in Section **B.** of this endorsement:

   **a.** Because of the manner in which such equipment, systems, software, or any components thereof recognize, interpret, process or differentiate dates or times, or are unable to recognize, interpret, process or differentiate dates or times; or

   **b.** In anticipation of the manner in which such equipment, systems, software, or any components thereof may recognize, interpret, process or differentiate dates or times, or may be unable to recognize, interpret, process or differentiate dates or times; or

2. Obtain advice or consultation with respect to **C.1.** above.

CNAPDF - www.fevisi.com

IL 00 21 11 85

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" include radioactive, toxic or explosive properties;

    "Nuclear material" means "source material," "Special nuclear material" or "by-product material";

    "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

    "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

    "Nuclear facility" means:

        (a) Any "nuclear reactor";

        (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium,

1

Copyright, Insurance Services Office, Inc., 1983, 1984

IL 01 68 09 92

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME – LIABILITY FOR GUESTS' PROPERTY PREMISES COVERAGE FORM
COMMERCIAL CRIME – LIABILITY FOR GUESTS' PROPERTY SAFE DEPOSIT BOX COVERAGE FORM
COMMERCIAL CRIME – SAFE DEPOSITORY LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the DUTIES Condition.

We will notify the first Named Insured in writing of:

1. An initial offer to compromise or settle a claim made or "suit" brought against any insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

IL 01 68 09 92

Copyright, Insurance Services Office, Inc., 1992

IL 02 75 06 95

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3.  If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act,

then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

a.  The first Named Insured; and

b.  Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

4.  If notice is mailed, proof of mailing will be sufficient proof of notice.

5.  The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

Copyright, Insurance Services Office, Inc., 1995
Copyright, ISO Commercial Risk Services, Inc., 1995

IL 02 75 06 95



**For All the Commitments You Make·**

# IMPORTANT INFORMATION

## FROM THE MEMBER COMPANIES OF CNA INSURANCE (CNA)

An Employment-Related Practices Exclusion endorsement has been added to your enclosed General Liability Coverage. This Employment-Related Practices Exclusion endorsement excludes coverage for Bodily Injury, Property Damage, Personal Injury and Advertising Injury arising out of Employment Related Practices. Employment Related Practices includes practices such as termination of an employee's employment; harassment, humiliation or discrimination of an employee and other related employment practices. It was not the coverage intent of your General Liability coverage to cover employment related practices. The Employment Related Practices Exclusion has been added to your policy to clarify our coverage intent and therefore help avoid misunderstandings at time of loss.

CNA recognizes that employment related practices represent a significant exposure for most employers and therefore has developed a separate policy to provide coverage for employment related practices. If you would like more information on this coverage or if you have any other questions please contact your CNA Agent.



**CNA**

*For All the Commitments You Make*

G-132246-A
(Ed. 07/98)

## Important Notice To Policyholders
## Property, Crime, Inland Marine and Boiler and Machinery Coverage Parts
### (Attachment of G-129948-A, Exclusion of Coverage For Date Related Costs)

This notice is designed to give you an overview of how the Property, Inland Marine, Crime or Boiler Machinery Coverage Part or your policy addresses date related claims. This notice is **not** your policy. READ YOUR POLICY CAREFULLY to determine rights, duties, and what is and is not covered. Only the provisions of your policy determine the scope of your insurance protection.

If your policy contains a Property, Inland Marine, Crime or Boiler Machinery Coverage Part, **G-129948-A,** Exclusion of Coverage For Date Related Costs will be attached to your policy. This new exclusion endorsement specifically reinforces that there is no coverage under the Commercial Property, Inland Marine, Crime and Boiler and Machinery Coverage Parts of your policy for:

- Costs or expenses incurred to assess, design, identify, inspect, install, maintain, modify, monitor, rectify, repair, replace, reprogram or test any equipment, systems, software or their components due to the manner, or in anticipation of the manner, in which equipment, systems, software, or their components recognize, interpret, process or differentiate dates or times, or are unable to recognize, interpret, process or differentiate dates or times; or

- Loss of business income or extra expense incurred due to the period of time required to assess, design, identify, inspect, install, maintain, modify, monitor, rectify, repair, replace, reprogram or test any equipment, systems, software or their components due to the manner, or in anticipation of the manner, in which equipment, systems, software, or their components recognize, interpret, process or differentiate dates or times, or are unable to recognize, interpret, process or differentiate dates or times.

Please note that this exclusion endorsement is **not a reduction** in the coverage provided under the existing policy forms. Physical loss or damage is a prerequisite to coverage under all first party property damage and time element coverages, as set forth clearly in your policy. In the majority of cases, it is anticipated that date-related incidents will not result in direct physical loss or damage, but will instead result in dissatisfaction with the manner in which equipment, systems, software, or their components recognize, interpret, process or differentiate dates or times, even though the property is operating as it was designed or programmed to operate.

For example, if the equipment is programmed to only accept the last two digits of any year (e.g. XX) and the programming is also designed to recognize the first two digits of the year as 19, the equipment will correctly recognize the year 2001 as 1901, as designed. It may not be the result that the user is looking for, but there is no direct physical loss or damage to the equipment, as it is performing exactly as it was designed.

In the event direct physical loss or damage does result from a date related incident, we will rely on our existing policy provisions and exclusions in determining whether or not there is coverage for the resulting loss or damage.



**For All the Commitments You Make**

# IMPORTANT INFORMATION

## FOR TEXAS POLICYHOLDERS

**TO OBTAIN INFORMATION OR MAKE A COMPLAINT, YOU MAY CALL:**
**OUR TOLL-FREE TELEPHONE NUMBER AT 1-800-262-3370**

**ALSO**
**YOU MAY CONTACT**
**THE TEXAS DEPARTMENT OF INSURANCE TO OBTAIN INFORMATION**
**ON COMPANIES, COVERAGES, RIGHTS OR COMPLAINTS AT**
**1-800-252-3439**

**YOU MAY WRITE**
**THE TEXAS DEPARTMENT OF INSURANCE**
**PO BOX 149104**
**AUSTIN TX 78714-9104**
**FAX (512) 475-1771**

**PREMIUM OR CLAIM DISPUTES**

Should you have a dispute concerning your premium or about a claim, you should contact your agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.



**CNA**
*For All the Commitments You Make*

CNA Plaza
Chicago, Illinois 60685

| Policy Number | From   Policy Period   To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00   08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

```
            **  PAYMENT PLAN SCHEDULE  **

    IT IS AGREED THAT THE TOTAL ESTIMATED PREMIUM SHOWN IN
    THE DECLARATIONS OF THIS POLICY IS PAYABLE AS FOLLOWS:

            EFFECTIVE DATE          PREMIUM

              08/02/00            $11,189.00

            TOTAL PREMIUM         $11,189.00
```

ISSUE DATE 08/22/00

  

CNA Plaza
Chicago, Illinois 60685

**Fo- all the Commitments You Make**

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00   08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

**Named Insured And Address** | **Agent**

COASTAL ENGINEERING INC
P O BOX 893
SAN BENITO, TX  78586

HUGHSTON INSURANCE AGENCY INC
46 COVE CIRCLE
P.O. BOX 8550
BROWNSVILLE  TX  78526

TEXAS COMMERCIAL PACKAGE POLICY - COMMON POLICY DECLARATION

NAMED INSURED IS: ( ) INDIVIDUAL     ( ) PARTNERSHIP  ( X ) CORPORATION
( ) JOINT VENTURE  ( ) OTHER:

POLICY PERIOD:  THIS POLICY BECOMES EFFECTIVE AND EXPIRES AT 12:01 A.M.
STANDARD TIME AT LOCATION OF DESCRIBED PROPERTY.

BUSINESS DESCRIPTION:  COMMERCIAL SUBCONTRACTOR

LOCATION OF PREMISES (ENTER "SAME" IF SAME LOCATION AS ABOVE)
SEE ATTACHED COVERAGE PARTS

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF
THIS POLICY, THE COMPANY INDICATED ABOVE AGREES TO PROVIDE THE INSURANCE
STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS
INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| COMMERCIAL PROPERTY COVERAGE PART | $ 5690 |
| COMMERCIAL GLASS COVERAGE PART | $ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ 5499 |
| PROFESSIONAL LIABILITY COVERAGE PART | $ |
| COMMERCIAL CRIME COVERAGE PART | $ |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ |
| ELECTRONIC EQUIPMENT PROTECTION COVERAGE PART | $ |
| BOILER AND MACHINERY COVERAGE PART | $ |
| TOTAL PROVISIONAL PREMIUM | $ 11189 |

ARTICLE 6.13 POLICY A LIQUIDATED DEMAND. A FIRE INSURANCE POLICY, IN CASE OF
A TOTAL LOSS BY FIRE OF PROPERTY INSURED, SHALL BE HELD AND CONSIDERED TO BE
A LIQUIDATED DEMAND AGAINST THE COMPANY FOR THE FULL AMOUNT OF SUCH POLICY.
THE PROVISIONS OF THIS ARTICLE SHALL NOT APPLY TO PERSONAL PROPERTY.

COUNTERSIGNED: _____   BY _____
DATE                    (AUTHORIZED REPRESENTATIVE)

5-58877-D42 (02/96 ED.)


Chairman of the Board          Secretary

INSURED

 

**CNA**
For All the Commitments You Make

CNA Plaza
Chicago, Illinois 606



DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

### COMMERCIAL PROPERTY COVERAGE PART - DECLARATIONS

( X ) "X" IF SUPPLEMENTAL DECLARATIONS IS ATTACHED

NAMED INSURED IS: (  ) INDIVIDUAL      (  ) PARTNERSHIP  ( X ) CORPORATION
(  ) JOINT VENTURE   (  ) OTHER:

POLICY PERIOD:  THIS POLICY BECOMES EFFECTIVE AND EXPIRES AT 12:01 A.M.
STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS
CONTAINED HEREIN, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED.

DESCRIPTION OF PREMISES

| PREM.<br>NO. | BLDG.<br>NO. | LOCATION, CONSTRUCTION AND OCCUPANCY |
|---|---|---|
| 001 | 001 | 185-187 N. TRAVIS ; SAN BENITO , TX 78586<br>JOISTED MASONRY  OFFICES |

COVERAGES PROVIDED - INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR
COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN.

| PREM.<br>NO. | BLDG.<br>NO. | COVERAGE | LIMIT OF<br>INSURANCE | COVERED CAUSES<br>OF LOSS | +COINSURANCE |
|---|---|---|---|---|---|
| 001 | 001 | BUILDING | 300,000 | SPECIAL | 80% |
| | | PERS PROP INSURED | 300,000 | SPECIAL | 80% |
| | | BUS INCOM W/O RENT | 150,000 | SPECIAL | N/A |

+ IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT.

Gerald L. Hagsburgh
Chairman of the Board

John Kenton
Secretary

INSURED

           

**CNA Plaza**
**Chicago, Illinois 60685**
For All the Commitments You Make

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

Named Insured And Address                     Agent

COASTAL ENGINEERING INC          HUGHSTON INSURANCE AGENCY INC
P O BOX 893                      46 COVE CIRCLE
SAN BENITO, TX  78586            P.O. BOX 8550
                                 BROWNSVILLE  TX  78526

OPTIONAL COVERAGE - APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW

AGREED VALUE

| PREM. NO. | BLDG. NO. | EXPIRATION DATE | COVERAGE | AMOUNT |
|---|---|---|---|---|
| ----- | ----- | ---------- | ------------------------------------ | ------------ |

REPLACEMENT COST IS INDICATED BY (X)  INFLATION GUARD (PERCENTAGE)

| PREM. NO. | BLDG. NO. | BUILDING | PERSONAL PROPERTY | PERSONAL PROPERTY INCLUDING "STOCK" | BUILDING | PERSONAL PROPERTY |
|---|---|---|---|---|---|---|
| 001 | 001 | ( (X) ) | ( ) | ( ) | | |
| 001 | 001 | ( ) | ( (X) ) | ( ) | | |
| | | ( ) | ( ) | ( ) | | |

| PREM. NO. | BLDG. NO. | * MONTHLY LIMIT OF INDEMNITY (FRACTION) | * MAXIMUM PERIOD OF INDEMNITY (X) | * EXTENDED PERIOD OF INDEMNITY (DAYS) |
|---|---|---|---|---|
| 001 | 001 | 1/3 | ( ) | |
| | | | ( ) | |
| | | | ( ) | |

MORTGAGE HOLDER(S)                    * APPLIES TO BUSINESS INCOME ONLY

PREMISES NO.  BUILDING NO.  MORTGAGE HOLDER NAME AND MAILING ADDRESS

Chairman of the Board          Secretary

INSURED

 

CNA Plaza
Chicago, Illinois 60685



DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION.

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00  08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

DEDUCTIBLE

$    1000 EXCEPTIONS:  $1,000

FORMS AND ENDORSEMENTS APPLICABLE AT TIME OF ISSUANCE:

APPLICABLE TO  ALL COVERAGES:
  SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS

APPLICABLE TO SPECIFIC PREMISES/COVERAGES:
  PREM.   BLDG.
  NO.     NO.          COVERAGES                 FORM NUMBER

PREMIUM FOR THIS COVERAGE PART: PREMIUM PAYABLE AT INCEPTION $    5690.00

COUNTERSIGNED:_____          BY _____
              DATE                              AUTHORIZED AGENT

THESE DECLARATIONS AND THE GENERAL DECLARATIONS, IF APPLICABLE, TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF
ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

P-55161-B  (11/90 ED.)

Bernard L. Hughstus
Chairman of the Board

John Keaton
Secretary

INSURED

 

CNA Plaza
Chicago, Illinois 60685



DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION.

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | 08/02/01 | | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE TX  78526 |

COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL DECLARATIONS

DESCRIPTION OF PREMISES

| PREM.<br>NO. | BLDG.<br>NO. | LOCATION, CONSTRUCTION AND OCCUPANCY |
|---|---|---|
| 002 | 001 | 225-227 W. STENGER ; SAN BENITO , TX 78586<br>MSRY NON-COMBST  CONCRETE/CEMENT DISTTOWERS-RENTED TO OTH |
| 002 | 002 | 187 N. TRAVIS AVE ; SAN BENITO , TX 78586<br>JOISTED MASONRY  OFFICE |

COVERAGES PROVIDED

| PREM.<br>NO. | BLDG.<br>NO. | COVERAGE | LIMIT OF<br>INSURANCE | COVERED CAUSES<br>OF LOSS | +COINSURANCE |
|---|---|---|---|---|---|
| 002 | 001 | BUILDING | 5,000 | SPECIAL | 80% |
| 002 | 001 | BUILDING | 40,000 | SPECIAL | 80% |
| 002 | 002 | BUILDING | 160,000 | SPECIAL | 80% |

+ IF EXTRA EXPENSE COVERAGE,
LIMITS ON LOSS PAYMENT

OPTIONAL COVERAGES

AGREED VALUE

| PREM.<br>NO. | BLDG.<br>NO. | EXPIRATION<br>DATE | COVERAGE | AMOUNT |
|---|---|---|---|---|



Chairman of the Board

Secretary

INSURED

 

CNA
For All the Commitments You Make

CNA Plaza
Chicago, Illinois 60685

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION

| Policy Number | Policy Period From | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|
| C1 98537207 | 08/02/00 | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

**Named Insured And Address**

COASTAL ENGINEERING INC
P O BOX 893
SAN BENITO, TX 78586

**Agent**

HUGHSTON INSURANCE AGENCY INC
46 COVE CIRCLE
P.O. BOX 8550
BROWNSVILLE TX 78526

OPTIONAL COVERAGES ( CONTINUED )

| PREM. NO. | BLDG. NO. | REPLACEMENT COST IS INDICATED BY (X): BUILDING | PERSONAL PROPERTY | PERSONAL PROPERTY INCLUDING "STOCK" | INFLATION GUARD (PERCENTAGE): BUILDING | PERSONAL PROPERTY |
|---|---|---|---|---|---|---|
| 002 | 001 | ( (X) ) | ( ) | ( ) | | |
| 002 | 001 | ( (X) ) | ( ) | ( ) | | |
| 002 | 002 | ( (X) ) | ( ) | ( ) | | |

| PREM. NO. | BLDG. NO. | * MONTHLY LIMIT OF INDEMNITY (FRACTION) | * MAXIMUM PERIOD OF INDEMNITY (X) | * EXTENDED PERIOD OF INDEMNITY (DAYS) |
|---|---|---|---|---|
| | | | ( ) | |
| | | | ( ) | |
| | | | ( ) | |

* APPLIES TO BUSINESS INCOME ONLY

MORTGAGE HOLDER(S)

| PREM. NO. | BLDG. NO. | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|---|

Chairman of the Board

Secretary

INSURED

ClibPDF - www.fastio.com

CNA Plaza
Chicago, Illinois 60685

For All the Commitments You Make<sup>,</sup>



DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION -

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

FORMS APPLICABLE TO SPECIFIC PREMISES/COVERAGES

| PREM.<br>NO. | BLDG.<br>NO. | COVERAGES | FORM NUMBER |
|---|---|---|---|
| ---------- | ---------- | ---------------------------- | ---------------------- |

SEE ATTACHED SCHEDULE

OF

FORMS AND ENDORSEMENTS

CP 12 05 11 85

P-55160-B (11/90 ED.)

Bernard L. Hughesburgh
Chairman of the Board

John Kanton
Secretary

INSURED

  

CNA Plaza
Chicago, Illinois 60685

**CNA**
*For All the Commitments You Make®*

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION-

| Policy Number | From **Policy Period** To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00  08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL DECLARATIONS

DESCRIPTION OF PREMISES

| PREM.<br>NO. | BLDG.<br>NO. | LOCATION, CONSTRUCTION AND OCCUPANCY |
|---|---|---|
| 002 | 002 | 187 N. TRAVIS AVE ; SAN BENITO , TX 78586 |

COVERAGES PROVIDED

| PREM.<br>NO. | BLDG.<br>NO. | COVERAGE | LIMIT OF<br>INSURANCE | COVERED CAUSES<br>OF LOSS | +COINSURANCE |
|---|---|---|---|---|---|
| 002 | 002 | PERS PROP INSURED | 51,000 | SPECIAL | 80% |
| 002 | 002 | PERS PROP INSURED | 249,000 | SPECIAL | 80% |
| 002 | 002 | BUS INCOM W/O RENT | 100,000 | SPECIAL | N/A |

+ IF EXTRA EXPENSE COVERAGE,
LIMITS ON LOSS PAYMENT

OPTIONAL COVERAGES

AGREED VALUE

| PREM.<br>NO. | BLDG.<br>NO. | EXPIRATION<br>DATE | COVERAGE | AMOUNT |
|---|---|---|---|---|

CEMPDF — http://www.texlo.com

*Bernard L. Hughsburgh*
Chairman of the Board

*John Kenton*
Secretary

INSURED

  

CNA Plaza
Chicago, Illinois 60685

**For All the Commitments You Make'**

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION-

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 98537207 | 08/02/00 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX 78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE TX 78526 |

OPTIONAL COVERAGES ( CONTINUED )

|  |  | REPLACEMENT COST IS INDICATED BY (X) | | | INFLATION GUARD (PERCENTAGE) | |
|---|---|---|---|---|---|---|
| PREM.<br>NO. | BLDG.<br>NO. | BUILDING | PERSONAL<br>PROPERTY | PERSONAL PROPERTY<br>INCLUDING "STOCK" | BUILDING | PERSONAL<br>PROPERTY |
| 002 | 002 | ( ) | ( (X) ) | ( ) |  |  |
| 002 | 002 | ( ) | ( (X) ) | ( ) |  |  |
|  |  | ( ) | ( ) | ( ) |  |  |

| PREM.<br>NO. | BLDG.<br>NO. | * MONTHLY LIMIT OF<br>INDEMNITY (FRACTION) | * MAXIMUM PERIOD<br>OF INDEMNITY (X) | * EXTENDED PERIOD<br>OF INDEMNITY (DAYS) |
|---|---|---|---|---|
| 002 | 002 | 1/3 | ( ) |  |
|  |  |  | ( ) |  |
|  |  |  | ( ) |  |

MORTGAGE HOLDER(S)                              * APPLIES TO BUSINESS INCOME ONLY

| PREM.<br>NO. | BLDG.<br>NO. | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|---|
|  |  |  |

Chairman of the Board

Secretary

INSURED

  

**CNA**
*For All the Commitments You Make*

CNA Plaza
Chicago, Illinois 60685

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION-

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

**Named Insured And Address**

COASTAL ENGINEERING INC
P O BOX 893
SAN BENITO, TX  78586

**Agent**

HUGHSTON INSURANCE AGENCY INC
46 COVE CIRCLE
P.O. BOX 8550
BROWNSVILLE  TX  78526

FORMS APPLICABLE TO SPECIFIC PREMISES/COVERAGES

| PREM. NO. | BLDG. NO. | COVERAGES | FORM NUMBER |
|---|---|---|---|
| ---------- | ---------- | --------------------------- | ----------------------- |

SEE ATTACHED SCHEDULE

OF

FORMS AND ENDORSEMENTS

CP 12 05 11 85

P-55160-B (11/90 ED.)

*Bernard L. Hughebugh*
Chairman of the Board

*Jonthen Kanton*
Secretary

  

**CNA**
For All the Commitments You Make

CNA Plaza
Chicago, Illinois 60685

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION-

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

COMMERCIAL PROPERTY COVERAGE PART SUPPLEMENTAL DECLARATIONS

DESCRIPTION OF PREMISES

| PREM. NO. | BLDG. NO. | LOCATION, CONSTRUCTION AND OCCUPANCY |
|---|---|---|
| 003 | 001 | 225 W. STENGER ST ; SAN BENITO , TX 78586<br>MOD FIRE RESIST   CLOTHING/WEARING    APPAREL STORES-FP |
| 006 | 001 | TURNER & WILLIAMS ROAD ; SAN BENITO , TX 78586<br>FRAME              CONTRACTOR |

COVERAGES PROVIDED

| PREM. NO. | BLDG. NO. | COVERAGE | LIMIT OF INSURANCE | COVERED CAUSES OF LOSS | +COINSURANCE |
|---|---|---|---|---|---|
| 003 | 001 | BUILDING | 140,000 | SPECIAL | 80% |
| 003 | 001 | BUS INCOM W/O RENT | 14,400 | SPECIAL | N/A |
| 006 | 001 | BUILDING | 15,000 | SPECIAL | 80% |

OPTIONAL COVERAGES

+ IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

AGREED VALUE

| PREM. NO. | BLDG. NO. | EXPIRATION DATE | COVERAGE | AMOUNT |
|---|---|---|---|---|
| | | | | |

*Bernard L. Hengesbaugh*
Chairman of the Board

*John Kuter*
Secretary

INSURED

 

**CNA Plaza**
**Chicago, Illinois 60685**



For All the Commitments You Make'

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION -

| Policy Number | From | Policy Period | To | Coverage is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

OPTIONAL COVERAGES ( CONTINUED )

| | | REPLACEMENT COST IS INDICATED BY (X) | | | INFLATION GUARD (PERCENTAGE) | |
|---|---|---|---|---|---|---|
| PREM.<br>NO. | BLDG.<br>NO. | BUILDING | PERSONAL<br>PROPERTY | PERSONAL PROPERTY<br>INCLUDING "STOCK" | BUILDING | PERSONAL<br>PROPERTY |
| 003 | 001 | ( (X) ) | (     ) | (     ) | | |
| 006 | 001 | ( (X) ) | (     ) | (     ) | | |
| | | (     ) | (     ) | (     ) | | |

| PREM.<br>NO. | BLDG.<br>NO. | * MONTHLY LIMIT OF<br>INDEMNITY (FRACTION) | * MAXIMUM PERIOD<br>OF INDEMNITY (X) | * EXTENDED PERIOD<br>OF INDEMNITY (DAYS) |
|---|---|---|---|---|
| 003 | 001 | 1/6 | (     ) | |
| | | | (     ) | |
| | | | (     ) | |

MORTGAGE HOLDER(S)                    * APPLIES TO BUSINESS INCOME ONLY

| PREM.<br>NO. | BLDG.<br>NO. | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|---|
| | | |



INSURED

CNAPDF - www.texlia.com

 

CNA Plaza
Chicago, Illinois 60685



For All the Commitments You Make'

DECLARATIONS
YOUR CONTRACTORS PACKAGE

NEW DECLARATION

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

FORMS APPLICABLE TO SPECIFIC PREMISES/COVERAGES

| PREM.<br>NO. | BLDG.<br>NO. | COVERAGES | FORM NUMBER |
|---|---|---|---|
| ---------- | ---------- | ---------------------------- | ----------------------- |

SEE ATTACHED SCHEDULE

OF

FORMS AND ENDORSEMENTS

CP 12 05 11 85

P-55160-B (11/90 ED.)

Bernard L. Hughston
Chairman of the Board

John Kenton
Secretary

 

**CNA**
For All the Commitments You Make®

CNA Plaza
Chicago, Illinois 60685

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | | 08/02/01 | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX 78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE TX 78526 |

POLICY FORMS AND ENDORSEMENTS SCHEDULE

FORM NUMBER          FORM TITLE

```
*** PROPERTY FORMS AND ENDORSEMENTS ***
P56015B     11/91    CHANGE ENDORSEMENT
CP0010      10/91    Building and Personal Property Coverage Form
CP0030      10/91    Business Income Coverage Form (And Extra Expense)
CP0090      07/88    Commercial Property Conditions
CP0142      12/92    Texas Changes
CP1030      10/91    Causes of Loss - Special Form
G129948A    03/98    Exclusion Of Coverage For Date-Related Costs
G132246A    07/98    Important Notice To Policyholders
G20532A42   12/93    CNA s Package Extension Endorsement - Texas
IL0017      11/98    Common Policy Conditions
IL0275      06/95    Texas Changes - Cancellation and Nonrenewal

*** PLEASE READ THE ENCLOSED IMPORTANT NOTICES CONCERNING YOUR POLICY: ***
G127687A    02/98    Important Info-TCP Policyholders-Prop. Extensions
G53752D42H    /      Important Information for Texas Policyholders
```

P 55738 A  01/86

*Edward L. Hughesbury*
Chairman of the Board

*Jonathan Kenton*
Secretary

INSURED





**CNA**
*For All the Commitments You Make*

CNA Plaza
Chicago, Illinois 60685

NEW DECLARATION.

| Policy Number | From | Policy Period | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|---|
| C1 98537207 | 08/02/00 | 08/02/01 | | VALLEY FORGE INSURANCE COMPANY | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING INC<br>P O BOX 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE  TX  78526 |

CHANGE ENDORSEMENT

\*\*\*   THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.   \*\*\*

THIS ENDORSEMENT IS A PART OF YOUR POLICY AND TAKES EFFECT ON THE EFFECTIVE
DATE OF YOUR POLICY, UNLESS ANOTHER EFFECTIVE DATE IS SHOWN BELOW.

COMPLETED NAMED INSURED
--------------------------------

COASTAL ENGINEERING, INC.
JNM CONCRETE, INC.
JNK CONCRETE, INC.
J. NEIL MURPHY
SOLAR SHIELD SUN SCREENS, INC.

POLICY CHANGE NO.          EFFECTIVE DATE OF THIS POLICY CHANGE

COUNTERSIGNED _____     BY _____
                    DATE                         AUTHORIZED REPRESENTATIVE
P-56015-B (11/91 ED.)



Bernard L. Hengesbaugh
Chairman of the Board

John Easton
Secretary

INSURED

 

CP 00 10 10 91

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H – DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Permanently installed:

(a) Fixtures;

(b) Machinery; and

(c) Equipment;

(3) Outdoor fixtures;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

**c. Personal Property of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, deeds, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

CP 00 10 10 91

Copyright, ISO Commercial Risk Services, Inc., 1990

  

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired or Constructed Property**

(1) You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is 25% of the Limit of Insurance for Building shown in the Declarations, but not more than $250,000 at each building.

(2) You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this Extension is 10% of the Limit of Insurance for Your Business Personal Property shown in the Declarations, but not more than $100,000 at each building.

(3) Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

(a) This policy expires.

(b) 30 days expire after you acquire or begin to construct the property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**b. Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft.

(2) Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers and Records – Cost of Research**

You may extend the insurance that applies to Your Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. The most we will pay under this Extension is $1,000 at each described premises.

**d. Property Off-Premises**

You may extend the insurance provided by this Coverage Form to apply to your Covered Property, other than "stock," that is temporarily at a location you do not own, lease or operate.

Copyright, ISO Commercial Risk Services, Inc., 1990



(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**e.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**f.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if:

(1) You have complied with all of the terms of this Coverage Part; and

(2) (a) We have reached agreement with you on the amount of loss; or

(b) An appraisal award has been made.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:

**a.** Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1) Vandalism;

(2) Sprinkler leakage, unless you have protected the system against freezing;

(3) Building glass breakage;

(4) Water damage;

(5) Theft; or

(6) Attempted theft.

**b.** Reduce the amount we would otherwise pay for the loss or damage by 15%.

A building is vacant when it does not contain enough business personal property to conduct customary operations.

Buildings under construction are not considered vacant.

Copyright, ISO Commercial Risk Services, Inc., 1990

Case 1:01-cv-00150   Document 1   Filed in TXSD on 09/07/2001   Page 74 of 132

 

**Example No. 2** (Adequate Insurance):
When:

| | |
|---|---|
| The value of the property is | $250,000 |
| The Coinsurance percentage for it is | 80% |
| The Limit of Insurance for it is | $200,000 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

Step (1):  $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $200,000 ÷ $200,000 = 1.00

Step (3): $40,000 x 1.00 = $40,000

Step (4): $40,000 – $250 = $39,750

We will cover the $39,750 loss in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**
When:

| | |
|---|---|
| The value of property is: | |
| Bldg. at Location No. 1 | $75,000 |
| Bldg. at Location No. 2 | $100,000 |
| Personal Property at Location No. 2 | $75,000 |
| | $250,000 |
| The Coinsurance percentage for it is | 90% |
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $180,000 |
| The Deductible is | $1,000 |
| The amount of loss is Bldg. at Location No. 2 | $30,000 |
| Personal Property at Location No. 2. | $20,000 |
| | $50,000 |

Step (1):  $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000 ÷ $225,000 = .80

Step (3): $50,000 x .80 = $40,000.

Step (4): $40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2.   Mortgage Holders**

**a.**   The term "mortgage holder" includes trustee.

**b.**   We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.**   The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.**   If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

   **(1)**   Pays any premium due under this Coverage Part at our request if you have failed to do so;

   **(2)**   Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)**   Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

   All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.**   If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   **(1)**   The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   **(2)**   The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

   At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.**   If we cancel this policy, we will give written notice to the mortgage holder at least:

   **(1)**   10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **(2)**   30 days before the effective date of cancellation if we cancel for any other reason.

**g.**   If we elect not to renew this policy, we will give written notice to the mortgage holder at least

CP 00 10 10 91                     Copyright, ISO Commercial Risk Services, Inc., 1990



## H. DEFINITIONS

1. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

Copyright, ISO Commercial Risk Services, Inc., 1990




(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations," the "period of restoration" will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

d. **Extended Business Income.** We will pay for the actual loss of Business Income you incur during the period that:

(1) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(2) Ends on the earlier of:

(a) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in **(1)** above.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

4. **Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a. You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay for loss under this Extension is 10% of the Limit of Insurance for Business Income shown in the Declarations, but not more than $100,000 at each location.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

## B. EXCLUSIONS

See applicable Causes of Loss Form as shown in the Declarations.

## C. LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Alterations and New Buildings;
2. Civil Authority;
3. Extra Expense; or
4. Extended Business Income.

## D. LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Loss**

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

 Copyright, ISO Commercial Risk Services, Inc., 1990

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration," once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

5. **Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

a. You have complied with all of the terms of this Coverage Part; and

b. (1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

## E. ADDITIONAL CONDITION

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than:

a. The Coinsurance percentage shown for Business Income in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) All operating expenses, including payroll expenses,

that would have been earned (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in step 1; and

3. Multiply the total amount of loss by the figure determined in step 2.

We will pay the amount determined in step 3. or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

| | | |
|---|---|---|
| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $400,000 |
| | The Coinsurance percentage is | 50% |
| | The Limit of Insurance is | $150,000 |
| | The amount of loss is | $80,000 |

Step 1: $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 ÷ $200,000 = .75

Step 3: $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the,

Copyright, ISO Commercial Risk Services, Inc., 1990

 

(1) The Business Income Limit of Insurance; divided by

(2) The Agreed Value.

**Example:**

When: The Limit of Insurance
is                                      $100,000
The Agreed Value is                     $200,000
The amount of loss is                    $80,000

Step (a):   $100,000 ÷ $200,000 = .50

Step (b):   .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period Of Indemnity**

   Under paragraph **A.3.d.,** Extended Business Income, the number "30" in subparagraph **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## G. DEFINITIONS

1. **"Finished Stock"** means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. **"Operations"** means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

3. **"Period of Restoration"** means the period of time that:

   a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

   "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

   The expiration date of this policy will not cut short the "period of restoration."

4. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. **"Rental Value"** means the:

   a. Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and

   b. Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and

   c. Fair rental value of any portion of the described premises which is occupied by you.

Copyright, ISO Commercial Risk Services, Inc., 1990

 

CP 01 42 12 92

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99**, the term Coverage Part is replaced by the term Policy.

**B.** The provisions of items **B.1.** through **B.5.** below apply to the following coverage forms:

BUILDING AND PERSONAL PROPERTY
COVERAGE FORM;
CONDOMINIUM ASSOCIATION COVERAGE FORM;
CONDOMINIUM COMMERCIAL UNIT-OWNERS
COVERAGE FORM;
BUILDERS RISK COVERAGE FORM;
TOBACCO SALES WAREHOUSES COVERAGE
FORM; AND
STANDARD PROPERTY POLICY

**1.** Under Additional Coverages, the Debris Removal coverage is deleted and replaced by the following:

**Debris Removal**

We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period.

**2.** Under Additional Coverages, the Fire Department Service Charge coverage is deleted.

**3.** Under Additional Coverages, the Pollutant Clean Up and Removal coverage is deleted.

**4.** Under LIMITS OF INSURANCE, the third and fourth paragraphs (second and third paragraphs in the Tobacco Sales Warehouses Coverage Form) are deleted and replaced by the following:

The limits applicable to the Coverage Extensions are in addition to the Limits of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

  **a.** Preservation of Property; or

  **b.** Debris Removal; but if the sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance, we will pay up to an additional $5,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

**5.** Under DEFINITIONS, the definition of "pollutants" is deleted.

**C.** The ADDITIONAL COVERAGE – COLLAPSE in the CAUSES OF LOSS – BROAD FORM is deleted and replaced by the following:

**Additional Coverage – Collapse**

We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building.

We will not pay for loss or damage described below unless the loss or damage is a direct result of the collapse of a building:

**1.** Loss or damage to the following types of property, if otherwise covered in this Coverage Part: outdoor radio or television antennas, including their lead-in wiring, masts or towers; awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces; and

**2.** Loss or damage by settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings.

This Additional Coverage will not increase the Limits of Insurance provided in this Coverage Part.

Section **E.** of this endorsement restricts collapse coverage on property covered under the Builders Risk Coverage Form.

**D.** The provisions of items **D.1.** through **D.5.** below apply to the CAUSES OF LOSS – SPECIAL FORM.

**1.** Exclusion **B.2.d.(4)** is deleted and replaced by the following exclusion:

  **(4)** Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs, ceilings, curbs, fences, retaining walls or swimming pools.

**2.** Exclusion **B.2.f.**, which pertains to continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more, is deleted. However, all other exclusions pertaining to loss or damage by water continue to apply.

**3.** Exclusion **B.2.k.**, Collapse, is deleted. However, Section **E.** of this endorsement restricts collapse coverage on property covered under the Builders Risk Coverage Form.

**4.** Exclusion **B.2.l.**, which pertains to pollutants, is deleted.

1

Copyright, ISO Commercial Risk Services, Inc., 1992



**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

**a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

**b.** We will still retain our right to deny the claim.

**H.** The provision requiring signed, sworn proof of loss in the DUTIES IN THE EVENT OF LOSS OR DAMAGE Loss Condition is replaced by the following:

Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

**I.** Under the LOSS PAYMENT CONDITION, the provisions pertaining to notice of our intentions and the time period for payment of claims are deleted and replaced by the following:

**1. Claims Handling**

**a.** Within 15 days after we receive written notice of claim, we will:

**(1)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgement;

**(2)** Begin any investigation of the claim; and

**(3)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**b.** We will notify you in writing as to whether:

**(1)** The claim or part of the claim will be paid;

**(2)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**(3)** More information is necessary; or

**(4)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **b. (1)** through **b.(4)** above, within:

**(1)** 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

**(2)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

**2.** We will pay for covered loss or damage within 5 business days after:

**a.** We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this Coverage Part, we will make payment within 5 business days after the date you have complied with such terms.

The following paragraphs are added:

**3. Catastrophe Claims**

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **I.1.** and **I.2.** above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

**(1)** Is declared a disaster under the Texas Disaster Act of 1975; or

**(2)** Is determined to be a catastrophe by the State Board of Insurance.

**4.** The term "business day," as used in the LOSS PAYMENT CONDITION, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**J.** The following is added to the VALUATION Loss Condition:

**Article 6.13. Policy a Liquidated Demand.** A fire insurance policy, in case of total loss by fire of property insured, shall be held and considered to be a liquidated demand against the Company for the full amount of such policy. The provisions of this Article shall not apply to personal property.

**K.** Paragraphs **d.** and **f.** of the MORTGAGE HOLDERS ADDITIONAL CONDITION are replaced by the following:

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

Copyright, ISO Commercial Risk Services, Inc., 1992



CP 10 30 10 91

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** – Definitions.

## A. COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

**1.** Excluded in Section **B.,** Exclusions; or

**2.** Limited in Section **C.,** Limitations;

that follow.

## B. EXCLUSIONS

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance or Law

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

### b. Earth Movement

**(1)** Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

**(2)** Volcanic eruption, explosion or effusion. But if loss or damage by fire, building glass breakage or volcanic action results, we will pay for that resulting loss or damage.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

### c. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

### d. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

### e. Off-Premises Services

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

### f. War And Military Action

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### g. Water

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up from a sewer or drain; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

1

Copyright, ISO Commercial Risk Services, Inc., 1990



(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to reproduce "finished stock."

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas, including their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

(5) Any other consequential loss.

**b. Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.** Ordinance or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

**c. Legal Liability Coverage Form**

(1) The following Exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph **B.1.a.**, Ordinance or Law;

(b) Paragraph **B.1.c.**, Governmental Action;

(c) Paragraph **B.1.d.**, Nuclear Hazard;

(d) Paragraph **B.1.e.**, Power Failure; and

(e) Paragraph **B.1.f.**, War and Military Action.

(2) **Contractual Liability**

We will not defend any claim or "suit," or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement.

(3) **Nuclear Hazard**

We will not defend any claim or "suit," or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**C. LIMITATIONS**

1. We will not pay for loss of or damage to:

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

3

Copyright, ISO Commercial Risk Services, Inc., 1990



**a.** You may extend coverage to apply more than 1,000 feet from the described premises to:

    **(1)** Your Business Property in transit; and/or

    **(2)** The property of others for which you are responsible which is to become a part of your installation, fabrication, or erection project.

**b.** **(1)** Loss or damage must be caused by or resulting from a Covered Cause of Loss or one of the following additional covered causes of loss: Flood, meaning the rising of rivers and streams; earthquake; collision; derailment or overturn of transporting vehicles; collapse of bridges, culverts, docks, or wharves;

    **(2)** Loss or damage by theft must be caused by or resulting from the theft of an entire bale, case, or package by forced entry (of which there must be visible evidence) into the properly locked body or compartment of the vehicle;

**c.** The most we will pay in any one occurrence for loss or damage under this **Coverage Extension** is:

    **(1)** $15,000 for property in transit or for property that is to become part of an installation, fabrication, or erection project while in transit, and in the care, custody or control of your salesperson;

    **(2)** $1,000 for all other property in the care, custody or control of your salesperson while in transit.

Loss or damage due to theft of property from a vehicle is subject to the following: that vehicles will be properly locked even when garaged in a public or private garage (the doors of the private garage will be locked). Properly locked means all vehicle doors, compartments, and windows are closed and locked.

This coverage is additional insurance. The Coinsurance Condition does not apply to this **Coverage Extension.**

**D.** The following is added under Paragraph **E. Additional Coverage Extensions**:

**3.** **Back Up of Sewer or Drain Water Damage.**

Item **(3)** of Section **B. EXCLUSIONS,** Part **1.**, paragraph **g. Water,** is limited as follows:

We will pay for loss or damage to covered property caused by water that backs up from a sewer or drain. However, this **Coverage Extension** does not provide coverage for loss or damage due to water emanating from a sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface water.

The most we will pay under this **Coverage Extension** is $2,500 at each scheduled location where this loss or damage has occurred.

This Coverage Extension is additional insurance. The Coinsurance Condition does not apply to this **Coverage Extension.**

CVAPDF – www.fastio.com



diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

Collapse does not included settling, cracking, shrinkage, bulging or expansion.

This Additional Coverage will not increase the Limits of Insurance provided in this Coverage Part.

**E. ADDITIONAL COVERAGE EXTENSIONS**

1. **Property In Transit.** This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   c. The most we will pay for loss or damage under this Extension is $1000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder or Molten Material Damage.** If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**F. DEFINITIONS**

"Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   a. The cost of filling sinkholes; or

   b. Sinking or collapse of land into man-made underground cavities.

2. Falling objects does not include loss or damage to:

   a. Personal property in the open; or

   b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

CP 10 30 10 91          Copyright, ISO Commercial Risk Services, Inc., 1990



G-127687-A
(Ed. 02/98)

(4) The exclusion of fences and outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers in paragraph **n.(2)** does not apply.

## 2. Changes to the Additional Coverages

The following changes broaden the insurance provided under Section **A.4. Additional Coverages:**

**a. Fire Department Service Charge – Increased Limit**

The limit that applies to the Fire Department Service Charge Additional Coverage is increased to $25,000.

**b.** The following Additional Coverages are added:

**(1) Manufacturers' Consequential Loss Assumption**

We will pay the reduction in value of the remaining parts of "stock" in process of manufacture that are undamaged but are unmarketable as a complete product because of direct physical loss or damage from a Covered Cause of Loss to other parts of covered "stock" in process of manufacture at the described premises.

Payments under this Additional Coverage will not increase the applicable Covered Property Limit of Insurance.

In the application of the Coinsurance Additional Condition, the value of "stock" in process of manufacture at any of the described premises includes the additional value that it represents at other locations.

**(2) Theft Damage to Unowned Building Property**

**(a)** We will pay for damage to:

**(i)** That part of any unowned building containing Your Business Personal Property; or

**(ii)** Unowned Equipment within that building used to maintain or service the building;

caused directly by theft or attempted theft.

**(b)** This Additional Coverage is primary and applies only to premises where you are a tenant and are required in your lease to cover this exposure.

This Additional Coverage does not apply to damage by fire or explosion.

**(c)** This Additional Coverage is included within the Limit of Insurance applicable to Your Business Personal Property at the location of loss, and does not increase that Limit of Insurance.

## (3) Recharge of Fire Protection Equipment

**(a)** We will pay expenses you incur to recharge automatic fire protection equipment due to the leakage or discharge of the fire suppressant within the automatic fire protection equipment. The insurance provided under this Additional Coverage applies regardless of how the discharge or leakage is caused. But if the leakage or discharge is caused by or results from a Covered Cause of Loss, no deductible applies.

**(b)** The most we will pay in any one occurrence under this Additional Coverage is:

**(i)** The applicable Covered Property Limit of Insurance when the leakage or discharge is caused by or results from a Covered Cause of Loss; or

**(ii)** $10,000 at each described premises when the leakage or discharge is caused by or results from a cause of loss other than a Covered Cause of Loss.

These limits are part of, and not in addition to, the applicable Covered Property Limit of Insurance. But if:

**(i)** The leakage or discharge is caused by or results from a Covered Cause of Loss; and

**(ii)** The sum of direct physical loss or damage, debris removal expense and fire protection equipment recharge expense exceeds the Limit of Insurance;

we will pay an additional amount, up to $5,000 for each location in any one occurrence.

## 3. Changes to the Coverage Extensions

The following changes broaden the insurance provided under Section **A.5. Coverage Extensions:**



**d. Trees, Shrubs and Plants – Extended Coverage and Increased Limit**

Under Coverage Extension **e. Outdoor Property,** the insurance provided for outdoor trees, shrubs and plants is deleted and replaced by the following:

You may extend the insurance provided by this Coverage Form, including debris removal expense, to apply to loss or damage to your outdoor trees, shrubs and plants (other than "stock" of trees, shrubs and plants) caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss or damage to this property in any one occurrence under this Extension is $25,000 at each described premises.

**e.** The following Coverage Extensions are added. Each of these additional Coverage Extensions is additional insurance. The Additional Condition, Coinsurance does not apply to these additional Coverage Extensions.

**(1) Personal Property in Transit**

**(a)** You may extend the insurance provided by this Coverage Form to apply to Covered Property in the due course of transit more than 1,000 feet from the described premises.

**(b)** This Extension does not apply to:

**(i)** Property shipped by mail;

**(ii)** Property while waterborne, except in regular ferry operations in the course of being moved by other means of transportation, and then to include General Average and Salvage Charges for which you may become liable;

**(iii)** Import or export shipments once under the protection of marine insurance; or

**(iv)** Property sold by you under conditional sale, trust agreement, installment payment after delivery to customers.

**(c)** The most we will pay for loss or damage in any one occurrence under this Extension is $15,000.

**(d)** The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Commercial Property Condition does not apply to the insurance provided under this Extension.

With respect to property in the due course of transit, nothing must be done either prior to or after a loss to impair our rights of recovery against any carrier, bailee or other party responsible for damages. This Coverage Part will be void with respect to the insurance provided for property in the due course of transit if you or anyone else to or for whom we would have made payment does anything to impair these rights. But our right to retain or recover premium will not be affected. In addition, we will not pay for any loss or damage to property in the due course of transit which you settle or compromise without our written consent. But you may accept released bills of lading from common carriers.

**(2) Installation Coverage**

**(a)** You may extend the insurance that applies to Your Business Personal Property and Personal Property of Others to apply to Business Personal Property that will or has become a permanent part of an installation, fabrication or erection project being performed for others by you, or on your behalf, while such property is:

**(i)** At a job site awaiting and during installation, fabrication, erection and/or testing, and awaiting acceptance by the purchaser; or

**(ii)** Temporarily stored at a location other than the described premises or the job site.

**(b)** This Extension does not apply to loss or damage to property at a location owned by you, or to property in the due course of transit.

**(c)** The most we will pay for loss or damage in any one occurrence under this Extension is $15,000.

**(d)** Insurance under this Extension will end when any of the following first occurs:

**(i)** This policy expires;

**(ii)** Your interest in the property ceases;

**(iii)** The installation, fabrication or erection project is accepted by the purchaser as complete; or

**(d)** As used in this Extension:

**(i) Money** means:

* Currency, coins and bank notes whether or not in current use; and

* Travelers checks, register checks and money orders held for sale to the public.

**(ii) Securities** means negotiable and non-negotiable instruments or contracts representing either Money or other property and includes tokens, revenue and food stamps, and evidences of debt issued in connection with credit or charge cards which are not of your own issue.

But Securities does not include:

* Money;

* Stamps, other than revenue or food stamps;

* Tickets, including lottery tickets held for sale; or

* Letters of credit.

**(5) Storage of Duplicate Data and Records**

You may extend the insurance provided by this Coverage Form to apply to duplicate valuable papers and records, including those which exist on electronic or magnetic media, which are permanently stored at locations other than the described premises.

The most we will pay for loss or damage at all locations in any one occurrence under this Extension is $50,000.

**(6) Accounts Receivable**

**(a)** You may extend the insurance provided by this Coverage Form to apply to the following loss and expenses resulting from loss or damage by a Covered Cause of Loss to your records of accounts receivable, including those records which exist on media used in data processing operations:

**(i)** All amounts due from your customers that you are unable to collect;

**(ii)** Interest charges on any loan required to offset amounts you

are unable to collect pending our repayment of these amounts;

**(iii)** Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

**(iv)** Other reasonable expenses that you incur to reestablish your records of accounts receivable.

**(b)** This Extension applies only to loss or damage to records of accounts receivable:

**(i)** At or within 1000 feet of the described premises;

**(ii)** At new locations you acquire during the policy period, but only for the period of time Your Business Personal Property is covered at such locations under the Newly Acquired or Constructed Property Coverage Extension;

**(iii)** Temporarily at locations you do not own, lease or operate; or

**(iv)** In transit.

**(c)** The most we will pay in any one occurrence under this Extension for loss or expense due to loss or damage to records of accounts receivable:

**(i)** At or within 1000 feet of each described premises is $25,000;

**(ii)** At each newly acquired or temporary location, or in transit, is $15,000.

**(d)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss, the following method will be used:

**(i)** Determine the average monthly amount of accounts receivable for the 12 months immediately preceding the month in which the loss occurs; and

**(ii)** Adjust that average monthly amount for any normal fluctuations in the amount of accounts receivable for the month in which the loss occurred or for any demonstrated variance from the monthly average.

**(e)** The following will be deducted from

CSMPDF - www.fesisa.com

**2. Changes to the Limitations on Loss**

Section **C. LIMITATIONS** is amended by the following:

**a.** Limitations **1.c.**, **1.d.** and **1.f.** do not apply. If otherwise covered under this Coverage Part, we will pay for loss of or damage to:

**(1)** The interior of a building or structure, or to personal property inside a building or structure, caused by rain, snow, sleet, ice, sand or dust, regardless of whether or not:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure;

**(2)** Building materials and supplies not attached as part of a building or structure, caused by theft; and

**(3)** Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

**b.** Limitation **1.e.**, which excludes loss of property that is missing, does not apply to:

**(1)** Property in the custody of carriers or other bailees for hire;

**(2)** Electronic data processing equipment;

**(3)** The:

**(a)** Valuable Papers and Records –Cost of Research;

**(b)** Storage of Duplicate Data and Records; or

**(c)** Accounts Receivable;

Coverage Extensions in the Building and Personal Property Coverage Form; or

**(4)** Loss of Business Income or Extra Expense resulting from such loss to records which exist on electronic media.

**c.** Limitation **3.a.**, which limits the causes of loss that are covered with respect to loss or damage to valuable papers and records, including those which exist on electronic or magnetic media, does not apply.

**d.** Limitation **4.d.**, which limits the amount payable for theft of stamps, tickets and letters of credit, does not apply.

**e.** The following is added:

We will not pay for loss of or damage to property as described and limited below. In addition we will not pay for any loss that is a consequence of loss or damage as described and limited below:

**(1)** Outdoor antennas (including satellite dishes) and their lead-in wiring, masts or towers, caused by or resulting from snow, ice, sleet, windstorm or hail.

**(2)** Property in an unattended vehicle more than 1000 feet from the described premises caused by or resulting from theft or attempted theft.

But this limitation does not apply to property:

**(a)** Contained in a fully enclosed and securely locked body or compartment of a vehicle if the theft is by forcible entry, evidence by visible marks upon the body or compartment; or

**(b)** In the custody of carriers by hire.

**(3)** Valuable papers and records, including those which exist on electronic or magnetic media and records of accounts receivable, caused by or resulting from:

**(a)** Programming errors or faulty machine instructions;

**(b)** Bookkeeping, accounting or billing errors or omissions; or

**(c)** Other errors or omissions in processing or copying.

**3. Changes to the Additional Coverage Extensions**

Section **E. ADDITIONAL COVERAGE EXTENSIONS** is amended by the following:

**a.** Additional Coverage Extension **1. Property In Transit** is deleted in its entirety. Refer to the property in transit coverage included in the Coverage Extensions provided under the Building and Personal Property Coverage Form.

**b.** The following Additional Coverage Extension is added:

**Back Up of Sewers or Drains**

The term Covered Cause of Loss includes direct physical loss or damage caused by or resulting from water that backs up from a sewer or drain, subject to the following limitations:

c. With respect only to the insurance provided under this Additional Coverage, the definition of **"Period of Restoration"** in Section **G. DEFINITIONS,** is amended as follows:

(1) Under paragraph **a.,** the phrase "caused by or resulting from any Covered Cause of Loss at the described premises" is replaced by "caused by or resulting from any Covered Cause of Loss to the property in the due course of transit."

(2) Under paragraph **b.,** the phrase "property at the described premises" is replaced by "property in the due course of transit."

d. The most we will pay for loss in any one occurrence under this Additional Coverage is $10,000. Payments under this Additional Coverage will not increase the applicable Business Income Limit of Insurance.

## E. CHANGE TO THE EXTRA EXPENSE COVERAGE FORM

### Newly Acquired Locations – Extended Coverage

The **Newly Acquired Locations** Coverage Extension in Section **A.4.** is replaced by the following:

1. You may extend your Extra Expense Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

2. The most we will pay for loss under this Extension is $100,000 at each location.

3. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 180 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium from the date you acquire the property.

This Extension is additional insurance.

The most we will pay for loss or damage covered under this. **Additional Coverage** is $10,000.

**g. Inventory and Appraisals**

In the event of loss or damage caused by a Covered Cause of Loss, we will pay reasonable expenses incurred by you at our request to assist us in the determination of the amount of loss such as taking inventory and appraisals.

We will not pay for the following:

(1) Expenses incurred under Section **E. Loss Conditions**, subparagraph **2. Appraisal**;

(2) Public adjusters' fees.

The most we will pay under this **Additional Coverage** is $5,000.

**h. Consequential Damage**

Consequential damage means a part or parts of your product are physically lost or damaged by a covered cause of loss causing the part or parts that are undamaged to be unmarketable as a complete product.

You may extend the insurance that applies to Your Business Personal Property to apply to the consequential loss of your undamaged product part or parts.

The most we will pay for loss or damage under this **Coverage Extension** is $10,000.

If this coverage is already provided under another coverage form or endorsement of this policy in which it is more specifically described, this additional coverage will not apply.

**H.** Item **a.** of paragraph **5. Coverage Extensions** is replaced by:

**a. Newly Acquired or Constructed Property**

(1) You may extend the insurance that applies to Covered Property to apply to:

(a) Your new building(s) while being built on the described premises; and

(b) Building(s) you acquire at locations, other than the described premises within the Coverage Territory, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse;

The most we will pay for loss or damage caused by a Covered Cause of Loss in

any one occurrence under this **Coverage Extension** is $500,000.

(2) You may extend the insurance that applies to Your Business Personal Property to apply to property at any premises you acquire within the Coverage Territory other than at any fair or exhibition.

The most we will pay for loss or damage caused by a Covered Cause of Loss in any one occurrence under this **Coverage Extension** is $250,000.

(3) Insurance under this **Coverage Extension** for each newly acquired or constructed property will end when any of the following occurs:

(a) This policy expires;

(b) 90 days expire after you acquire or begin to construct the property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**I.** Item **b.** of paragraph **5. Coverage Extensions** is replaced by:

**b. Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or your employees. The most we will pay for loss or damage by a Covered Cause of Loss under this **Coverage Extension** is $15,000 at each described premises;

(2) Personal Property of others in your care, custody or control. The most we will pay for loss or damage caused by a Covered Cause of Loss under this **Coverage Extension** is $15,000 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**J.** Item **c.** of paragraph **5. Coverage Extensions** is amended as follows:

The most we will pay for loss or damage by a Covered Cause of Loss under this **Coverage Extension, Valuable Papers and Records – Cost of Research** is $15,000 at each described premises.

**K.** Item **d.** of paragraph **5. Coverage Extensions** is replaced by:



# HUGHSTON
## INSURANCE AGENCY, INC.
**GENERAL INSURANCE • BONDS**
**Brownsville, Texas**

David C. Hughston, CIC, CPCU
Peggy Gonzalez, CIC, CPCU
Christopher Hughston, CIC
Ray Hughston, CIC, CPCU

April 18, 2001

Coastal Engineering, Inc.
P.O. Box 893
San Benito, TX 78586

Re:    Umbrella Policy
       1098767782      Exp: 08/02/2001

Dear Ida,

The enclosed endorsement has been issued to the above captioned policy and becomes part of the policy.

This endorsement is for:

       Correcting Named Insured on Umbrella policy

Please review this endorsement as it makes a change to your policy.

If you should have any questions or need to make any changes, please give our office a call.

Sincerely,

Peggy Gonzalez, CIC, CPCU

---

**46 COVE CIRCLE • P.O. BOX 8550 • BROWNSVILLE, TEXAS 78526-8550 • (956) 542-4387 • FAX (956) 542-8335**
**1-800-458-2399**



**For All the Commitments You Make®**

## Commercial Umbrella

## Endorsement Declaration

| | | |
|---|---|---|
| **POLICY NUMBER** | **COVERAGE PROVIDED BY** | **FROM - POLICY PERIOD - TO** |
| C 1098767782 | CONTINENTAL CASUALTY COMPANY | 08/02/2000      08/02/2001 |
| | CNA PLAZA | |
| | CHICAGO, ILLINOIS   60685 | |

**INSURED NAME AND ADDRESS**
COASTAL ENGINEERING, INC. (SEE ENDT)
P O DRAWER 893
SAN BENITO, TX   78586

**AGENCY NUMBER**
073655

**AGENCY NAME AND ADDRESS**
HUGHSTON INSURANCE AGENCY INC
46 COVE CIRCLE
P.O. BOX 8550
BROWNSVILLE, TX   78526
Phone Number: (956)542-4387

**BRANCH NUMBER**
360

**BRANCH NAME AND ADDRESS**
HOUSTON BRANCH
6565 W. LOOP S
BELLAIRE, TX   77401
Phone Number: (713)663-5200

This endorsement changes your policy.  Please read it carefully.

This endorsement results in no change in premium.

Your policy is composed of this Declarations, with the attached Coverage Forms, and
Endorsements if any.  The Policy Forms and Endorsement Schedule shows all forms
applicable to this policy at the time of policy issuance.

**PREMIUM**

Minimum Premium:   $13802       Annual              Total Policy Premium:

## ITEM 4: RETAINED LIMIT

Retained Limit: $25,000

INSURED                                                    Page   1 of   2

| POLICY NUMBER | INSURED NAME AND ADDRESS |
|---|---|
| C 1098767782 | COASTAL ENGINEERING, INC. (SEE ENDT)<br>P O DRAWER 893 |
| | SAN BENITO, TX  78586 |

**POLICY CHANGES**
**Manuscript General Liability**

**This Change Endorsement changes the Policy. Please read it carefully. This Change Endorsement is a part of your Policy and takes effect on the effective date of your Policy, unless another effective date is shown.**

EFFECTIVE AUGUST 2, 2000; THE NAME INSURED HAS BEEN AMENDED TO:

COASTAL ENGINEERING, INC.
JNM'S COASTAL ENTERPRISES, INC.
RANCHO MONTEAGUA, INC.
JOHN NEIL MURPHY TRUST
JOHN NEIL MURPHY LIFE INSURANCE TRUST
JOHN NEIL MURPHY & EDELMIRA YOUNG MURPHY

*Bernard L. Hugelmeyer*
Chairman of the Board

*Jonathan Kanton*
Secretary

G-56015-B (ED. 11/91)

# CNA
**For All The Commitments You Make®**

In consideration of no change in premium, the Named Insured is amended to read as follows:

Coastal Engineering, Inc.

JNM's Coastal Enterprises, Inc.

Rancho Monteagua, Inc.

John Nial Murphy Trust

John Neil Murphy Life Insurance Trust

John Neil Murphy & Edelmira Young Murphy

All other factors remain the same.

THIS ENDORSEMENT IS A PART OF YOUR POLICY AND TAKES EFFECT ON THE EFFECTIVE DATE OF YOUR POLICY UNLESS ANOTHER EFFECTIVE DATE IS SHOWN BELOW.

| POLICY CHANGE NO: | POLICY NUMBER: | EFFECTIVE DATE OF THIS POLICY CHANGE | |
|---|---|---|---|
| 1 | 1098767782 | 08/02/00 | |
| NAMED INSURED | AUTHORIZED REPRESENTATIVE COUNTERSIGNATURE | | DATE |
| Coastal Engineering, Inc. | | | 12/12/00 |

G-56016-B

**Hughston Insurance Agency**
**46 Cove Circle**
**P. O. Box 8550**
**Brownsville, TX  78526-8550**
**Phone: 956-542-4387**
**Fax: 956-542-8335**

| MEMO | |
|---|---|
| 00000490 | 5/18/2001 |
| | |
| | |

**Koppeles**
**(956) 421-4258**

**ATTENTION:  Terry**

**RE:    Coastal Engineering, Inc. /Coastal Engineering Employers**

**Per you conversation with David Hughston, enclosed are endorsements on**
**the umbrella policies for the above captioned.**

**Thank you.**

**Lizzie Parra, ACSR, CISR**
**Commerical Lines Department**

CNA
*For All the Commitments You Make*

**Commercial Umbrella**

**Endorsement Declaration**

| | | |
|---|---|---|
| **POLICY NUMBER** | **COVERAGE PROVIDED BY** | **FROM - POLICY PERIOD - TO** |
| C 1098767782 | CONTINENTAL CASUALTY COMPANY | 08/02/2000    08/02/2001 |
| | CNA PLAZA | |
| | CHICAGO, ILLINOIS  60685 | |
| | **INSURED NAME AND ADDRESS** | |
| | COASTAL ENGINEERING, INC. (SEE ENDT) | |
| | P O DRAWER 893 | |
| | SAN BENITO, TX  78586 | |
| **AGENCY NUMBER** | **AGENCY NAME AND ADDRESS** | |
| 073655 | HUGHSTON INSURANCE AGENCY INC | |
| | 46 COVE CIRCLE | |
| | P.O. BOX 8550 | |
| | BROWNSVILLE, TX  78526 | |
| | Phone Number: (956)542-4387 | |
| **BRANCH NUMBER** | **BRANCH NAME AND ADDRESS** | |
| 360 | HOUSTON BRANCH | |
| | 6565 W. LOOP S | |
| | BELLAIRE, TX  77401 | |
| | Phone Number: (713)663-5200 | |

This endorsement changes your policy.  Please read it carefully.

This endorsement results in no change in premium.

Your policy is composed of this Declarations, with the attached Coverage Forms, and Endorsements if any.  The Policy Forms and Endorsement Schedule shows all forms applicable to this policy at the time of policy issuance.

**PREMIUM**

Minimum Premium:  [ $13802        Annual ]        Total Policy Premium:  [                    ]

**ITEM 4: RETAINED LIMIT**

Retained Limit: $25,000

JAN 2 2 2001

AGENT                                    Page  1 of  2



**Commercial Umbrella**

**New Business Declaration**

| POLICY NUMBER | COVERAGE PROVIDED BY | FROM - POLICY PERIOD - TO |
|---|---|---|
| C 1098767782 | CONTINENTAL CASUALTY COMPANY | 08/02/2000    08/02/2001 |
| | CNA PLAZA | |
| | CHICAGO, ILLINOIS  60685 | |

**INSURED NAME AND ADDRESS**
COASTAL ENGINEERING EMPLOYERS INC
P O DRAWER 893
SAN BENITO, TX  78586

**AGENCY NUMBER**
073655

**AGENCY NAME AND ADDRESS**
HUGHSTON INSURANCE AGENCY INC
46 COVE CIRCLE
P.O. BOX 8550
BROWNSVILLE, TX  78526
Phone Number: (956)542-4387

**BRANCH NUMBER**
360

**BRANCH NAME AND ADDRESS**
HOUSTON BRANCH
6565 W. LOOP S
BELLAIRE, TX  77401
Phone Number: (713)663-5200

This policy becomes effective and expires at 12:01 A.M. standard time at your mailing address on the dates shown above.

The Named Insured is a Corporation.

Your policy is composed of this Declarations, with the attached Coverage Forms, and Endorsements if any.  The Policy Forms and Endorsement Schedule shows all forms applicable to this policy at the time of policy issuance.

**PREMIUM**

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| Flat Charge | N/A | | $12,208 |

Minimum Premium:  $12,208    Annual          Total Policy Premium:  $12,208.00

Audit Period is Not Auditable

INSURED                    Page   1 of   3

POLICY NUMBER                INSURED NAME AND ADDRESS
C,109B267782                ...STAL ENGINEERING EMPLOYERS IN...
                            P O DRAWER 893
                            SAN BENITO, TX  78586

## FORMS AND ENDORSEMENTS SCHEDULE

| Form Number | | Form Title |
|---|---|---|
| G56015B | 11/1991 | SCHEDULE OF UNDERLYING CARRIERS: |
| G115921A | 06/1995 | Named Insured Extension and Other Changes Endt |
| G115928A | 06/1995 | Employment-Related Practices Exclusion |
| G15057A | 10/1989 | Commercial Umbrella Plus Coverage Part |
| G15357C | 10/1993 | Amendatory Endorsement - Texas |
| G16373A- | 10/1990 | Amendatory Endorsement - Policy Territory |

### *** PLEASE READ THE ENCLOSED IMPORTANT NOTICES CONCERNING YOUR POLICY ***

| Form Number | | Form Title |
|---|---|---|
| G132259A42 | 07/1998 | General Liaiblity Policyholders notice -TX |
| G53752D42H | | Important Information for Texas Policyholders |

Countersignature

Bernard L. Hirschhorn
Chairman of the Board

Jonathan Kantor
Secretary

P-43770-B (Ed. 10/89)                INSURED                Page    3 of  3

| POLICY NUMBER | INSURED NAME AND ADDRESS |
|---|---|
| C 1098767782 | COASTAL ENGINEERING EMPLOYERS INC |
| | P O DRAWER 893 |
| | |
| | SAN BENITO, TX  78586 |

## POLICY CHANGES
### SCHEDULE OF UNDERLYING CARRIERS:

**This Change Endorsement changes the Policy. Please read it carefully. This Change Endorsement is a part of your Policy and takes effect on the effective date of your Policy, unless another effective date is shown.**

AUTO COVERAGE:POLICY NO:1098767765
              DATES:08/02/00-08/02/01
              COMPANY:CONTINENTAL CASUALTY COMPANY
              LIMITS:$1,000,000 (CSL)

PACKAGE COVERAGE:POLICY NO.:1098767779
              DATES:08/02/00-08/02/01
              COMPANY:VALLEY FORGE COMPANY
              LIMITS:$2,000,000/2,000,000/1,000,000

_Bernard L. Hagelmueyk_
Chairman of the Board

_Jonathan Kanter_
Secretary

G-56015-B (ED. 11/91)



**For All the Commitments You Make®**

# IMPORTANT INFORMATION

### TO OUR GENERAL LIABILITY POLICYHOLDERS DOING BUSINESS IN THE STATE OF TEXAS

As your general liability insurance carrier, we encourage you to take steps to provide a safe and healthy facility and premises for the general public. While CNA cannot assume this responsibility, we can assist you with the following services:

1.  Surveys of your premises to identify actual or potential areas of loss;

2.  Recommendations based on said surveys;

3.  Evaluation of your liability accident prevention program;

4.  Training of supervisory personnel;

5.  Consultation on Loss Control technical problems and/or questions;

6.  Analysis of previous accidents;

7.  Industrial Hygiene services;

8.  Accident prevention materials including safety bulletins, posters and training aids.

The above services are available to our policyholders at no additional charge and shall be provided upon request directly to the policyholder. We have professional resources available to assist you or can provide support material for your continuing accident prevention efforts. If you would like more information on our commercial vehicle safety and management programs, please call or write

CNA Insurance Companies
Attn: Loss Control
Plaza of the Americas
600 N. Pearl Street
Dallas, Texas 75201
(214) 220-1300

Again, if you have any questions or would like to discuss these services, please give us a call at the phone number listed above.



G-115921-A
(Ed. 06/95)

**THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.**

**NAMED INSURED EXTENSION AND OTHER CHANGES ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA PLUS COVERAGE PART

It is agreed that:

1.  Throughout this policy "you" and "your" also refer to the following:

    **a.** Subsidiaries of the Named Insured shown in the Declarations if such subsidiaries are in existence at policy inception; and

    **b.** A corporation or organization, other than partnerships and joint ventures, that the Named Insured shown in the Declarations forms, acquires or gains control of during the policy period, but only with respect to "incidents" taking place after the Named Insured shown in the Declarations forms, acquires or gains control of such corporation or organization;

    However:

    **a.** No additional person or organization is an insured as a result of the above provision, unless an insured under subparagraphs **1.c.** or **2.a.** of SEC- TION II – WHO IS AN INSURED; and

    **b.** Subparagraphs **2.b.**, and **2.d.** of SECTION II – WHO IS AN INSURED are deleted.

2.  Exclusion **g. (SECTION I – COVERAGES)** is deleted and replaced by the following:

    This insurance does not apply to:

    **g.** "Bodily injury" or "property damage" arising out of the:

    **(1)** ownership;

    **(2)** maintenance;

    **(3)** use; or

    **(4)** entrustment to others

    of a "watercraft" owned or operated by or rented or loaned to an insured. Use includes operation or "loading or unloading". This exclusion does not apply if such liability is covered by valid and col- lectible "underlying insurance" as listed in the Schedule of Underlying Insurance, for the full lim- its shown therein, and then only for such liability for which coverage is afforded under said "underlying insurance".

3.  Exclusion I. **(SECTION I – COVERAGES)** is deleted and replaced by the following:

    This insurance does not apply to:

    **I.** "Bodily injury" or "property damage" due to war, whether or not declared, or any act of or condition incident to war. War includes civil war, insurrec- tion, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

4.  **SECTION III – LIMITS OF INSURANCE** is amended as follows:

    **a.** Paragraph **2.** is amended to include the following subparagraph **d.**, and to revise the last sentence of Paragraph **2.**:

    **d.** "Ultimate net loss" paid in excess of the "retained limit".

    This aggregate limit of liability applies separately to **a.** through **d.** above.

    **b.** Paragraph **4.** is amended to delete the phrase "(which would except for the amount thereof, be covered under this policy)".

5.  The following paragraph is added to Condition **4. Other Insurance (SECTION IV):**

    This Condition does not apply to insurance pur- chased specifically to be excess of this Coverage Part.

CNAPDF - www.fexisa.com



G-15057-A
(Ed. 10/89)

**For All the Commitments You Make**

# COMMERCIAL UMBRELLA PLUS
# COVERAGE PART

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V – DEFINITIONS.**

## SECTION I – COVERAGES

**1. Insuring Agreement**

We will pay on behalf of the insured all sums that the insured becomes legally obligated to pay as "ultimate net loss" because of:

**a.** "Bodily Injury";

**b.** "Property Damage";

**c.** "Personal Injury"; or

**d.** "Advertising Injury",

caused by an "incident" which takes place during the policy period and in the policy territory.

**2. Exclusions**

This Insurance does not apply to:

**a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** "Personal injury" or "advertising injury:"

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**d.** Any obligation of the insured under a:

**(1)** workers' compensation;

**(2)** disability benefits; or

**(3)** unemployment compensation,

law or any similar law. Paragraph **(1)** of this exclusion does not apply to liability of others assumed by the insured under a valid "insured contract" which is in force at the time of an injury.

**e.** "Bodily injury" to:

**(1)** An employee of the insured arising out of and in the course of employment by the insured; or

**(2)** The spouse, child, parent, brother or sister of that employee as a consequence of **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to:

**(1)** Liability assumed by the insured under an "insured contract"; or

G-15057-A
(Ed. 10/89)

Page 1 of 14

CutePDF — www.foxits.com



of a "watercraft" owned or operated by or rented or loaned to an insured. Use includes operation or "loading or unloading". This exclusion does not apply to:

**(1)** a "watercraft" while ashore on premises you own or rent;

**(2)** a "watercraft" you do not own that is:

   **(a)** less than 26 feet long; and

   **(b)** not being used to carry persons or property for a charge; or

**(3)** liability assumed under an "insured contract" for the ownership, maintenance or use of "watercraft".

**h.** The ownership, maintenance, operation, use, "loading or unloading" of aircraft:

**(1)** owned by an insured; or

**(2)** chartered without crew by an insured or on an insured's behalf.

**i.** "Ultimate net loss" due to:

**(1)** war, whether declared or not;

**(2)** civil war;

**(3)** insurrection;

**(4)** rebellion; or

**(5)** revolution,

or to acts or conditions of the foregoing with respect to liability assumed by an insured under contracts or agreements.

**j.** "Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** "Property damage" to "your product" arising out of it or any part of it.

**l.** "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.** Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.** Liability for alleged or actual violations of the Employees Retirement Income Security Act of 1974 or any amendments or additions thereto.

**p.** Liability for a wrongful act, error, omission or breach of duty by an insured in the performance of the office of director or officer of an organization.

**q.** Liability imposed on the insured under an uninsured/underinsured motorist law, a personal injury protection law, a reparations benefit law or other similar law.



ing out of all "incidents" with respect to the following exposures insured by this policy:

**a.** The "Products-Completed Operations Hazard";

**b.** Occupational disease sustained by all employees of an insured; or

**c.** A hazard, other than in **a.** or **b.** above, for which an "underlying insurer" affords coverage subject to an aggregate limit and to which this policy applies.

This aggregate limit of liability applies separately to **a.** through **c.** above.

**3.** We shall only be liable for the "ultimate net loss" in excess of:

**a.** The applicable limits of "scheduled underlying insurance" in Item **5.** of the Declarations, for "incidents" covered by "scheduled underlying insurance", plus the limits of any "unscheduled underlying insurance" which also provides coverage for such "incidents";

**b.** The "unscheduled underlying insurance" or the "retained limit", whichever is greater, for "incidents" covered by "unscheduled underlying insurance" and by this policy only; or

**c.** The "retained limit" for "incidents" covered by this policy only;

but only up to the amount of our limits of liability in Item **3.** of the Declarations, because of a single "incident".

**4.** In the event of reduction or exhaustion of the aggregate limits of liability under "scheduled underlying insurance" solely by reason of payments of a combination of covered:

**a.** expenses;

**b.** settlements; or

**c.** judgments

paid thereunder as a result of "incidents" taking place during this policy period (which would, except for the amount thereof, be covered under this policy); this policy shall, subject to this limit of liability provision and to the remaining terms and provisions and conditions of this policy,

**a.** apply in excess of such reduction of "scheduled underlying insurance"; or

**b.** apply in place of the exhausted amount of "scheduled underlying insurance".

Nothing in **a.** or **b.** above shall serve to increase the limits of liability in Item **3.** of the Declarations.

**5.** The limits of this policy shall apply separately to:

**a.** each consecutive annual period; and

**b.** remaining periods of less than 12 months;

starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limits of liability.

## SECTION IV – CONDITIONS

**1. Financial Impairment**

Bankruptcy, rehabilitation, receivership, liquidation or other financial impairment of you or an "underlying insurer" shall neither relieve nor increase any of our obligations under this policy.

In the event there is diminished recovery or no recovery available to you as a result of such financial impairment of an insurer providing "scheduled underlying insurance", the coverage under this policy shall apply only in excess of the limits of liability stated in the "scheduled underlying insurance". Under no circumstances shall we be required to drop down and replace the limits of liability, or assume the obligations of a financially impaired insurer.

**2. Duties of the Insured**

**a.** In the Event of an Occurrence or Offense Which Has Not Resulted in a Claim or Suit

Whenever you have information of an occurrence or offense which involves injuries or damages likely to involve this policy, written notice shall be given by or for you to us or to our authorized agent as soon as practicable. The notice shall contain:

**(1)** Particular information sufficient to identify the insured;

**(2)** Such information as can be reasonably obtained with respect to time, place and circumstances of the occurrence or offense; and

**(3)** Names and addresses of the insured and of available witnesses.

**b.** In the Event of Claims or Suit

Immediate written notice shall be given by you to us whenever:

**(1)** A claim is made or "suit" is brought against you;

**(2)** You receive notice that a right to bring claim or "suit" against you will be asserted; or

**(3)** You obtain information that the obligation of "underlying insurers" to:

**(a)** investigate;

**(b)** defend;

CItoPDF - www.fastio.com

G-15057-A
(Ed. 10/89)

### 10. "Scheduled Underlying Insurance"

Material change in premium for "scheduled underlying insurance" shall be promptly reported to us. Premium for this policy may be adjusted to reflect changes in underlying insurance in accordance with our manuals in effect at the time of the change.

### 11. Maintenance of "Scheduled Underlying Insurance"

While this policy is in force you agree that the policies listed in the Declarations as "scheduled underlying insurance" and their renewals and replacements shall be maintained, without alterations of terms or conditions, in full effect during the term of this policy; except for reduction or exhaustion of the aggregate limits of liability in the "scheduled underlying insurance", provided that such reduction or exhaustion is solely the result of "incidents" taking place during this policy period, and not before. If you fail to maintain "scheduled underlying insurance", this condition shall not invalidate this policy. However, in the event of such failure, we will only be liable to the same extent as if you had complied with this condition.

### 12. Inspection

We have the right, but are not obligated to:

a.  Make inspections and surveys at any time;

b.  Give you reports on the conditions we find; and

c.  Recommend changes.

Inspections, surveys, reports or recommendations relate only to insurability and the premiums charged. We do not make safety inspections. We do not undertake to perform the duty of persons or organizations to provide for the health or safety of workers or the public. We do not warrant that conditions:

a.  Are safe or healthful; or

b.  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but to rating, advisory, rate service or similar organizations which make inspections, surveys, reports or recommendations.

### 13. Appeals

If you or your "underlying insurers" elect not to appeal a judgment in excess of the limits of liability afforded by the:

a.  "scheduled underlying insurance";

b.  "unscheduled underlying insurance"; or

c.  "retained limit";

we may elect to appeal. Our limit of liability shall not be increased because of such appeal. We will, however, pay the following costs and expenses:

a.  All premium bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy;

b.  All premiums on appeal bonds required in such defended "suit", but without obligation to apply for or furnish such bonds;

c.  Court fees;

d.  Costs and expenses taxed against you by the appellate court and interest accruing after entry of a judgment against you and before we have:

(1)  paid;

(2)  offered to pay; or

(3)  deposited in court

the part of the judgment that is within the applicable limit of insurance. Where the "underlying insurers" terminate their liability to pay interest on the judgment by an offer to pay their limits, you shall demand that such limits be paid. If the appeal is successful, such amounts not obligated to be paid shall be returned to such "underlying insurer".

### 14. Subrogation

In the case of any payments by us under the coverages of this policy, we shall be subrogated to all rights of recovery against any other party which you may have and will cooperate with you and all other interests. Amounts recovered shall be apportioned in the following order:

a.  Amounts paid in excess of the payments under this policy shall first be reimbursed up to the amount paid by those, including you, who made such payments;

b.  We are then to be reimbursed up to the amount we paid;

c.  Any remainder shall be available to the interests of those over whom this coverage is in excess and who are entitled to claim such remainder.

Expenses necessary to the recovery of such amounts shall be divided between the interests concerned, including you, in the ratio of their respective recoveries as finally settled.

### 15. Settlement of Claims or Suit

We may pay, but are not obligated to pay, any part or all of the amount of the "retained limit" to effect settlement of a claim or "suit". Upon notification of the action taken you shall promptly reimburse us for such part of the "retained limit" that we had paid. All Named Insureds are jointly and severally responsible for our reimbursement and agree to make such reimbursement within 30 days after we give you written notice or demand for payment.

Case 1:01-cv-00150   Document 1   Filed in TXSD on 09/07/2001   Page 106 of 132



7. **"Loading or unloading"** means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an "aircraft," "watercraft" or "automobile";

   **b.** While it is in or on an "aircraft", "watercraft" or "automobile"; or

   **c.** While it is being moved from an "aircraft", "watercraft" or "automobile" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the "aircraft", "watercraft" or "automobile".

8. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a, b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "automobiles":

   **(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing;

   **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on "automobile" or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

9. **"Incident"**

   **a.** With respect to claims which are covered, in whole or in part, by the immediate "scheduled underlying insurance" policy (whether or not the limits thereof become reduced or exhausted), "incident" means either an occurrence or offense, depending upon which term triggers coverage in your immediate "scheduled underlying insurance" policy.

   **(1)** The trigger of coverage, with respect to "bodily injury" and "property damage", is an occurrence. When coverage is triggered by an occurrence, then "incident" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that take place during this policy period.

   **(2)** The trigger of coverage, with respect to "personal injury" and "advertising injury", is an offense.

   **(a)** For "personal injury", when coverage is triggered by an offense, then "incident" means an act or series of acts of the same or similar nature committed during this policy period. All loss arising out of such act or series of acts, regardless of the frequency thereof or the number of claimants, shall be deemed to arise out of one offense.

   **(b)** For "advertising injury" when coverage is triggered by an offense, then "incident" means an act or series of acts in which the same or similar advertising material is used, regardless of the number or kind of media used, committed during this policy period. All damages involving the same injurious material or act, regardless of the:

   **(i)** frequency or repetition thereof;

   **(ii)** number or kind of media used; or

   **(iii)** number of claimants;

   shall be deemed to arise out of one offense.

"Your product" includes warranties or representations made with respect to the fitness, quality, durability, performance or use of "your product" and the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**15. "Your work"** means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made with respect to the fitness, quality, durability, performance or use of "your work" and the providing of or failure to provide warnings or instructions.

**16. "Retained limit"** means the amount stated in Item **4.** of the Declarations.

**17. "Scheduled underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance including renewal or replacement of such contracts which are not more restrictive than those listed in the aforementioned Schedule of Underlying Insurance.

**18. "Ultimate net loss"**

**a.** "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:

**(1)** final adjudication on the merits; or

**(2)** through compromise settlement with our written consent or direction;

because of "incident(s)" covered by this policy.

However, it includes the above mentioned sums only after deducting all other recoveries and salvages.

**b.** "Ultimate net loss" does not include the following:

**(1)** costs or expenses related to:

    **(a)** litigation;

    **(b)** settlement;

    **(c)** adjustment; or

    **(d)** appeals;

nor costs or expenses incident to the same which an "underlying insurer" has paid, incurred or is obligated to pay to or on behalf of the insured;

**(2)** pre-judgment interest;

**(3)** office costs and expenses and salaries and expenses of the employees of an insured;

**(4)** our office costs and expenses and salaries of our employees; or

**(5)** general retainer and/or monitoring fees of counsel retained by the insured.

**19. "Underlying insurer"** means an insurer whose policy covers an "incident" also covered by this policy but does not include insurers whose policies were purchased specifically to be in excess of this policy. It includes all insurers providing:

**a.** "unscheduled underlying insurance"; and

**b.** "scheduled underlying insurance".

**20. "Unscheduled underlying insurance"**

**a.** "Unscheduled underlying insurance" means insurance policies available to an insured, whether:

**(1)** primary;

**(2)** excess;

**(3)** excess-contingent; or

**(4)** otherwise;

except the policies listed in the Schedule of Underlying Insurance.

**b.** "Unscheduled underlying insurance" does not include insurance purchased specifically to be excess of this policy.

**21. "Watercraft"** means a vehicle designed to transport persons or property in or on water.

**SECTION VI – DEFENSE PAYMENT AND RELATED DUTIES**

**1.** If a claim or "suit" alleges damages covered by underlying policies and the obligation of all "underlying insurers" either to:

**a.** investigate and defend the insured; or

**b.** pay the cost of such investigation and defense;

ceases solely through exhaustion of all underlying limits of liability through payment of a combination of covered expenses, settlements or judgments for "incidents" taking place during our policy period, then we will either:

**a.** assume the investigation and defense of the insured against "suits" seeking damages; or

**b.** if we elect not to assume the investigation and defense in **1.a.** above, we will reimburse the insured for reasonable defense costs and expenses incurred with our written consent. However, such reimbursement excludes:

**(1)** office expenses of the insured;

**(2)** salaries and expenses of employees; and



# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (BROAD FORM)

It is agreed that:

**I.** This policy does not apply:

  **A.** Under Liability Coverage to "ultimate net loss":

    **1.** With respect to which you, under this policy, are also an insured under a nuclear energy liability policy issued by the:

      **a.** Nuclear Energy Liability Insurance Association;

      **b.** Mutual Atomic Energy Liability Underwriters; or

      **c.** Nuclear Insurance Association of Canada;

    or would be an insured under such policy but for its termination upon exhaustion of its limit of liability; or

    **2.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

      **a.** a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or a law or amendment thereof; or

      **b.** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or an agency thereof, under an agreement entered into by the United States of America, or any agency thereof, with a person or organization.

  **B.** Under any Medical Payment Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to "ultimate net loss" resulting from the "hazardous properties" of "nuclear material", and arising out of the operation of a "nuclear facility" by any person or organization.

  **C.** Under any Liability Coverage, to "ultimate net loss" resulting from the "hazardous properties" of "nuclear material," if:

    **1.** The "nuclear material":

      **a.** is at a "nuclear facility" owned by, or operated by or on behalf of, an insured; or

      **b.** has been discharged or dispersed therefrom;

    **2.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    **3.** The loss arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the:

      **a.** planning;

      **b.** construction;

      **c.** maintenance;

      **d.** operation; or

    use of a "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **C.3.** applies only to "ultimate net loss" to such "nuclear facility" and any property threat.

**II.** As used in this endorsement:

  **A.** "Hazardous properties" include radioactive, toxic or explosive properties.

  **B.** "Nuclear material" means "source material", "special nuclear material" or "byproduct material".

  **C.** "Source material", "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

  **D.** "Spent fuel" means a fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

  **E.** "Waste" means waste material:

    **1.** containing "byproduct material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from ore processed primarily for its "source material" content; and

    **2.** resulting from the operation, by a person or organization, of a "nuclear facility" included within paragraphs **1.** and **2.** of the definition of "nuclear facility".

  **F.** "Nuclear facility" means:

    **1.** a "nuclear reactor";

    **2.** any equipment or device designed or used for:

      **a.** separating the isotopes of uranium or plutonium;



**CNA**

*For All the Commitments You Make*

G-15357-C
(Ed. 10/93)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## AMENDATORY ENDORSEMENT – TEXAS

For policies issued or delivered in Texas, the policy terms and conditions are amended as follows:

**A.** Paragraph 1. Insuring Agreement of SECTION I – COVERAGES, is replaced by the following:

    1.  Insuring Agreement

    We will indemnify the insured all sums the insured becomes legally obligated to pay as "ultimate net loss" because of:

    **a.**  "Bodily Injury;"

    **b.**  "Property Damage;"

    **c.**  "Personal Injury;" or

    **d.**  "Advertising Injury,"

    caused by an "incident" which takes place during the policy period and in the policy territory.

**B.** Throughout SECTION VI – DEFENSE PAYMENT AND RELATED DUTIES, wherever the words "shall" and "will" appear, substitute the word "may".

**C.** Paragraph 6. of SECTION VI is replaced by the following:

    **6.**  Amounts we pay or incur pursuant to the option to defend or pay the costs and expenses of defense are in addition to, and not subject to, the limits of liability stated in the Declarations.

**D.** Paragraph **b.** of Condition 6. Cancellation (SECTION IV – CONDITIONS) is replaced by the following:

    **6.**  **b.**  **(1)**  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

            **(2)**  If this policy is in its initial policy period and has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the first Named Insured is an elected official.

            **(3)**  If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

                **(a)**  Fraud in obtaining coverage;

                **(b)**  Failure to pay premiums when due;

                **(c)**  An increase in hazard within the control of the insured which would produce an increase in rate;

                **(d)**  Loss of reinsurance covering all or part of the risk covered by the policy; or

                **(e)**  If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**E.** The following conditions are added to SECTION IV – CONDITIONS and supersede any provisions to the contrary:

    **17. NONRENEWAL**

    **a.**  We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the first Named Insured is an elected official.

    **b.**  If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

    **c.**  If notice is mailed, proof of mailing will be sufficient proof of notice.

    **18. Notice of Settlement of Liability Claim**

    **a.**  We will notify you in writing of any initial offer to compromise or settle a claim against you. We will give you notice within 10 days after the date the offer is made.

    **b.**  We will notify you in writing of any settlement of a claim against you. We will give you notice within 30 days after the date of the settlement.

CRAPDF - www.texis.com

**CNA**

*For All the Commitments You Make®*

G-16373-A
(Ed. 10/90)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDATORY ENDORSEMENT – POLICY TERRITORY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA PLUS COVERAGE PART

Section **VII., POLICY TERRITORY** is deleted in its entirety and replaced by the following:

### VII. POLICY TERRITORY

Policy Territory means:

1.  **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **b.** International waters or airspace, provided that the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above, or

    **c.** All parts of the world if:

    **(1)** The injury or damage arises out of:

    **(a)** Goods or products made or sold by you in the territory described in **a.** above; or

    **(b)** The activities of a person who home is in the territory described in **a.** above, but is away for a short time on your business; and

    **(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

2.  Anywhere else in the world (other than 1. above) provided such liability is covered by valid and collectible Underlying Insurance as listed in the Schedule of Underlying Insurance, for the full amount shown therein, and then only for such li-

ability for which coverage is afforded under said Underlying Insurance.

With respect to claims made or "suits" instituted in courts elsewhere than within:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; or

**c.** Canada;

we shall have the right, but not the duty, to defend such "suits" and to make such:

**a.** investigation;

**b.** negotiation; and

**c.** settlement,

of such claims or "suits" as we deem expedient; provided in such cases, in which we elect not to investigate, settle and defend, you, under our supervision, will make or cause to be made, such investigation and defense as may be reasonably necessary and, subject to prior authorization by us, will effect to deem prudent. We shall reimburse you for the reasonable cost of such:

**a.** investigation;

**b.** negotiation; and

**c.** settlement,

in the currency of the United States at the rate of exchange prevailing on the date of payment.

G-16373-A
(Ed. 10/90)

Page 1 of 1



**CNA**
*For All the Commitments You Make®*

# IMPORTANT INFORMATION

### FOR TEXAS POLICYHOLDERS

**TO OBTAIN INFORMATION OR MAKE A COMPLAINT, YOU MAY CALL:**
**OUR TOLL-FREE TELEPHONE NUMBER AT 1-800-262-3370**

**ALSO**
**YOU MAY CONTACT**
**THE TEXAS DEPARTMENT OF INSURANCE TO OBTAIN INFORMATION**
**ON COMPANIES, COVERAGES, RIGHTS OR COMPLAINTS AT**
**1-800-252-3439**

**YOU MAY WRITE**
**THE TEXAS DEPARTMENT OF INSURANCE**
**PO BOX 149104**
**AUSTIN TX 78714-9104**
**FAX (512) 475-1771**

**PREMIUM OR CLAIM DISPUTES**

Should you have a dispute concerning your premium or about a claim, you should contact your agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

G-53752-D42-H                                                              Page 1 of 1



CNA Plaza
Chicago, Illinois 60685

**For All the Commitments You Make®**

| Policy Number | From | Policy Period | To | Coverage is Provided By | Agency |
|---|---|---|---|---|---|
| C1098767782 | 08/02/00 | | 08/02/01 | Continental Casualty Company | 073655360 |

| Named Insured And Address | Agent |
|---|---|
| COASTAL ENGINEERING EMPLOYERS INC<br>P O DRAWER 893<br>SAN BENITO, TX  78586 | HUGHSTON INSURANCE AGENCY INC<br>46 COVE CIRCLE<br>P.O. BOX 8550<br>BROWNSVILLE, TX 78526 |

**\*\*   PAYMENT PLAN SCHEDULE   \*\***

IT IS AGREED THAT THE TOTAL ESTIMATED PREMIUM SHOWN IN
THE DECLARATIONS OF THIS POLICY IS PAYABLE AS FOLLOWS:

| EFFECTIVE DATE | PREMIUM |
|---|---|
| 08/02/2000 | $12,208.00 |
| TOTAL PREMIUM | $12,208.00 |

ISSUE DATE 08/18/00

**197th District Court**

**CAMERON COUNTY, TEXAS**

## ORDER TRANSFERRING CASES

The undersigned District Judge of the 197th District Court of the State of Texas, sitting in the Cameron County, Texas, hereby directs and orders that the pending civil cases listed below, pending in the 197th District Court, be hereby transferred to the 357th District Court, effective on _June 12 200.1_

IT IS FURTHER ORDERED that the pending civil cases listed below are hereby transferred to the 357th District Court effective _Immediately_ .

SIGNED FOR ENTRY: _June 12_ , 2001.

_Migdalia Lopez_

Judge Presiding

1. 1990-10-5980-C
   Aaron Alaniz vs. Norma Linda Alaniz

2. 1991-03-1260-C
   State of Texas vs. Danny Robles

3. 1991-09-5083-C
   Ernesto Rodriguez vs. Sandy Poy Rodriguez

4. 1991-11-7475-C
   State of Texas vs. Robert Resendez

5. 1994-11-6489-C
   Jonson Rao, et al vs. Wang Hui Chih

6. 1995-05-2231-C
   State of Texas vs. Adalberto Villafranca

7. 1996-09-4983-C
   State of Texas vs. Enrique Martinez

8. 1996-12-7324-C
   Kathryn F Stanford vs. Texas Boll Weevil Eradication Foundation

FILED 4:10 O'CLOCK P M
AURORA DE LA GARZA DIST. CLERK

JUN 12 2001

DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

46. 2000-03-1121-C
    Andis Construction Co Inc, et al vs. Raul De La Rosa

47. 2000-04-1478-C
    Rogelio Rodriguez vs. H E Butt Grocery Company

48. 2000-04-1549-C
    Omar Cano, et al vs. Arlin Taft Combs, et al

49. 2000-04-1604-C
    Roberto Sandra Bell vs. Brownsville Valley Regional Medical Center

50. 2000-04-1776-C
    Olivia Vasquez, et al vs. James Warren Lee

51. 2000-05-2003-C
    Christina Torres, et al vs. Sabas Pena, et al

52. 2000-05-2252-C
    Thomas Hancock vs. Richard Edley Martin, et al

53. 2000-06-2405-C
    Maria Eguia vs. Maria Del Carmen Campos

54. 2000-06-2520-C
    Consuelo Gonzales vs. Larry Warner

55. 2000-06-2525-C
    Rio Grande Orthopaedic Institute, et al vs. American National Insurance Company

56. 2000-06-2630-C
    Roanna Martinez vs. Shannon Adams

57. 2000-07-2895-C
    Blanca Puente vs. Centex Construction Company, Inc

58. 2000-07-3106-C
    Jose Luis Montes vs. Titan Tire Corporation of Texas

59. 2000-08-3316-C
    Veronica Chapa vs. Jose Angel Cisneros, et al

63. 2000-11-4636-C
    Ex Parte: Omar Padron

64. 2000-11-4707-C
    Scoggins Construction Company, Inc vs. County of Cameron

65. 2000-11-4718-C
    Modesto Rodriguez vs. TLC Adult Day Care Centers, Inc

66. 2000-12-5016-C
    Royal MFG Co, Inc vs. Opeline De Mexico, SA de CV

67. 2000-12-5091-C
    Marco Antonio Ongaro, et al vs. Salvador Ongaro, et al

68. 2001-01-459-C
    State of Texas vs. Hermilio Jara Pena

69. 2001-02-824-C
    In the interest of: Baby Tovar

70. 2001-03-1053-C
    Michael L Pashos vs. Cynthia Jean Pace- Pashos

71. 2001-03-1257-C
    Cameron County, et al vs. Border Fisheries, Inc

72. 2001-05-2179-C
    Maria Alejandra Caballero, et al vs. Diamler-Chrysler Corporation, et al

73. 2001-05-2202-C
    In the Interest of: Natalio Gonzalez
    2001 - 05 - 2457

Copies To:  **JUN 1 4 2001**

All Attorneys of Record



35741

# KOPPEL & ASSOCIATES, L.L.P.

SKAGGS & KOPPEL BUILDING
312 EAST VAN BUREN AVENUE
POST OFFICE BOX 2878
HARLINGEN, TEXAS 78551

ROLLINS M. KOPPEL
ALEJANDRO J. GARCIA

June 21, 2001

TELEPHONE (956) 425-2000
FACSIMILE (956) 421-4258
E-mail rollinskoppel@yahoo.com

Mrs. Aurora de la Garza
Cameron County District Clerk
Cameron County Courthouse
974 East Harrison
Brownsville, Texas 78520

Re:   Cause No. 2001-05-002457-C, *Coastal Engineering, Inc. v. National American Insurance Company, Liberty Mutual Fire Insurance Company and Valley Forge Insurance Company*, in the 197th District Court of Cameron County, Texas

Dear Mrs. de la Garza:

Enclosed is Plaintiff's Seconded Amended Original Petition which I ask you to file with the other documents of this case. I also enclose my check in the amount of $30.00 for the jury fee. Please note in the Court's file that this will be a jury trial.

Enclosed is my check in the amount of $24.00 for the issuance of three (3) citations to be issued as follows:

National American
David W. McLane
1601 Elm Street, Suite 3000
Dallas, Texas 75201

Liberty mutual
CT Corporation System
350 North St. Paul Street
Dallas, Texas 75201

Valley Forge
CT Corporation System
350 North St. Paul Street
Dallas, Texas 75201

6/21/01
Jury fee &
deposited

Please return the citations to my office so I may arrange for their service.

If you have any questions, do not hesitate to call. Thank you for your usual courtesies.

Mrs. Aurora de la Garza
June 21, 2001
Page 2

Yours very truly,

Rollins M. Koppel

RMK/pm
Enclosures:

CAUSE NO. 2001-05-002457

FILED ___ O'CLOCK ___ M
AURORA DE LA GARZA, DIST. CLERK
JUN 2 1 2001
DISTRICT COURT OF CAMERON COUNTY, TEXAS
____ DEP

| | | |
|---|---|---|
| COASTAL ENGINEERING, INC. | § | IN THE 197th DISTRICT COURT |
| | § | 357th |
| | § | |
| | § | |
| VS. | § | OF |
| | § | |
| NATIONAL AMERICAN INSURANCE | § | |
| COMPANY, LIBERTY MUTUAL FIRE | § | |
| INSURANCE COMPANY AND VALLEY | § | |
| FORGE INSURANCE COMPANY | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION

**COASTAL ENGINEERING, INC.** (hereinafter "Coastal" or "Plaintiff") brings this action against **NATIONAL AMERICAN INSURANCE COMPANY** (hereinafter referred to as "National American"), **LIBERTY MUTUAL FIRE INSURANCE COMPANY** (hereinafter referred to as "Liberty Mutual"), and **VALLEY FORGE INSURANCE COMPANY** (hereinafter referred to as "Valley Forge"), collectively referred to as Defendants, and for cause of action would respectfully show the Court as follows:

1.

Discovery in this action is intended to be conducted pursuant to Discovery Level 2, Rule 190 of Texas Rules of Civil Procedure.

2.

Plaintiff, Coastal Engineering, Inc. is a Texas Corporation which has its principal office and place of business in San Benito, Cameron County, Texas.

3.

National American is an insurance company duly incorporated under the laws of the State of Oklahoma and is doing business throughout the United States and in the State of

Page 1

Texas where pursuant to its permit to do business it has designated **David W. McLane at 1601 Elm Street, Suite 3000, Dallas, Texas 75201** as an agent upon whom process may be served.

Liberty Mutual is an insurance company duly incorporated under the laws of the State of Massachusetts and is doing business throughout the United States and in the State of Texas where pursuant to its permit to do business it has designated **CT Corporation System at 350 North St. Paul Street, Dallas, Texas 75201** as an agent upon whom process may be served.

Valley Forge is an insurance company duly incorporated under the laws of the State of Pennsylvania and is doing business throughout the United States and in the State of Texas where pursuant to its permit to do business it has designated **CT Corporation System at 350 North St. Paul Street, Dallas, Texas 75201** as an agent upon whom process may be served.

This Court has venue over the present action as a result of Plaintiff's residence in Cameron County and also as a result of the fact that Plaintiff has contracted with National American, Liberty Mutual and Valley Forge as its principal insurers under commercial general liability insurance policies issued to the Plaintiff as insured by all the Defendants.

4.

The present cause of action involves an application by the Plaintiff for a Declaratory Judgment construing Plaintiff's rights to defense and indemnification by each of the Defendants against claims made against the Plaintiff by numerous individual plaintiffs in the following causes of action now pending in Hidalgo County, Texas (hereinafter referred to collectively as "the underlying litigations", to-wit:

1.   Cause No. C-1365-00-G; Delma M. Singleterry, et al. v. Turner Construction Company of Texas, Inc. et al.; In the 370th District Court of Hidalgo County, Texas;

2.   Cause No. C-779-00-B; Cruz Alvarez, et al v. Jesus J. Ramirez, et al. Intervenors v. Turner Construction Company of Texas and D &F Industries, Inc. Defendants v. Drury South, Inc., et al;  In the 93rd District Court of Hidalgo County, Texas;

Copies of the most recent pleadings in the two (2) separate cases filed against the Plaintiff which are the subject matter of this application for Declaratory Judgment were filed simultaneously with Plaintiff's Original Petition as Exhibits "B" and "C" and are incorporated herein by reference.  Plaintiff claims that it is entitled to defense and indemnification by all of the Defendants for "covered occurrences" as defined by their respective policies.

Plaintiff is entitled to defense and indemnification from Liberty Mutual for  the years 1995, 1996, 1997, 1998, and part of 1999 pursuant to separate general liability  policies for each of such years; and copies of such primary policies were filed simultaneously with Plaintiff's Original Petition as Exhibits "D1", "D2", "D3", "D4" and are incorporated herein by reference.  Copies of Liberty Mutual umbrella policies were filed simultaneously with Plaintiff's Original Petition as Exhibits "E1", "E2", "E3", and "E4" and are incorporated herein by reference.

The coverage for the Plaintiff between August 2, 1999 and August 2, 2000 is provided by National American's general liability policy and umbrella policy, copies of which were filed  simultaneously with Plaintiff's Original Petition as Exhibits "F" and "G" respectively, and are incorporated herein by reference.

The coverage for the Plaintiff between August 2, 2000 and August 2, 2001 is provided by Valley Forge's general liability policy and umbrella policy, copies of which are

being filed simultaneously herewith as Exhibits "H" and "I" and are incorporated herein by reference.

<div align="center">5.</div>

The underlying lawsuits arose out of labor and materials furnished by Plaintiff as a subcontractor in connection with the construction of a new high school for the Pharr-San Juan-Alamo Consolidated Independent School District. At the time of the filing of Plaintiff's Original Petition and Plaintiff's First Amended Original Petition in the above entitled and numbered cause, Plaintiff was being sued for damages by the Pharr-San Juan-Alamo CISD in Cause Number C-1038-00-B as shown by Exhibit "A", previously filed herein. The individual Plaintiffs in the underlying litigations are relying upon various allegedly wrongful fortuitous occurrences which took place and presumably are still evolving, at least in part, by reason of alleged acts or omissions by the Plaintiff as a result of its participation in the building of the Pharr-San Juan-Alamo High School as shown by Exhibits "B" and "C", previously filed herein. Liberty Mutual and National American previously agreed to share the cost in providing a defense counsel selected solely by them in the Pharr-San Juan-Alamo CISD Case as well as in the underlying litigation. The Pharr-San Juan-Alamo CISD Case is now settled after approximately one week of trial which commenced on June 4, 2001. All three (3) of the Defendants participated in the settlement of the PSJA CISD Case and Coastal agreed to pay one percent (1%) of the agreed settlement in such case in order to buy its peace. Accordingly, no Declaratory Judgment is presently necessary relating to insurance coverage questions which previously existed in the PSJA CISD Case in that this matter is the subject of an Agreed Settlement.

In the past, Liberty Mutual and National American have attempted to apply unfair

pressure on the Plaintiff to become a "self-insurer" and advance settlement monies in the PSJA CISD Case by claiming facetiously that it was not covered for the majority of the occurrences which allegedly supported PSJA CISD's cause of action to property damages as well as the causes of action by the individual Plaintiffs in the underlying litigation. Such claims by Liberty Mutual and National American are not true, based upon the underlying facts which are well known to both of such Defendants. However, such position was and presumably still is the position of Liberty Mutual and National American as shown by prior "Reservation of Rights" letters issued by both of such Defendants. Valley Forge was advised of the PSJA CISD Case more recently and has therefore not issued a formal "Reservation of Rights" letter. However, based upon verbal communications from agents of Valley Forge, a "Reservation of Rights" letter will be forthcoming by Valley Forge which also participated in the settlement of the PSJA CISD Case with Liberty Mutual and National American on an equal pro-rata basis, based upon their years of exposure to covered occurrences.

Plaintiff's present exposure in the underlying litigation as reflected by pleadings previously filed herein (Exhibits "B" and "C") is essentially that as a result of Plaintiff's negligent acts and omissions, moisture was injected into the premises of the Pharr-San Juan-Alamo High School which resulted in the creation of mold; and such mold caused each and all of the numerous Plaintiffs to suffer significant injury from such mold contamination. Each of the claims asserted by the individual Plaintiffs in the underlying litigation constitute a separate "occurrence" for purposes of determining the responsibilities of Liberty Mutual, National American, and Valley Forge. Upon information and belief, Valley Forge will participate in paying the expenses for the defense counsel previously

selected by Liberty Mutual and National American, and will, likewise, join in claiming improperly that there are huge gaps in coverage as a result of the various occurrences which resulted in the individual personal injury claims now asserted against Coastal.

Plaintiff urges that based upon any reasonable common sense interpretation of the various insurance contracts referred to herein (and by applying the facts which give rise to the alleged actionable conduct of the Plaintiff in the underlying litigation) it should be determined that the Plaintiff has virtually one-hundred percent (100%) coverage for all damages proximately caused by Plaintiff's alleged conduct as claimed by the individual plaintiffs in the underlying litigation. As late as May 17, 2001, National American, acting through its counsel, in writing asserted that it is National American's position "...that there may be no coverage at all for the claim" in the PSJA CISD Case which involved the same or similar alleged acts or omissions which are now asserted by the individual Plaintiffs in the underlying litigation; and likewise representatives of Liberty Mutual have asserted various technical defenses to coverage based upon their interpretation of ambiguous language in the insurance contracts which must, as a matter of law, be interpreted in favor of Plaintiff as the insured if more than one reasonable construction of the language is determined to exist.

Upon information and belief based upon prior dealings with Valley Forge in the PSJA CISD Case, Valley Forge will likewise assert the same types of coverage defenses based upon similar ambiguous language in its insurance contract with the Plaintiff which has been previously asserted by Liberty Mutual and National American.

Accordingly, at the present time, a justiciable controversy exists, and Plaintiff is entitled to a Declaratory Judgment pursuant to §37.004 of the Texas Civil Practice and

Remedies Code asking for this Court and Jury to construe and determine Plaintiff's rights and remedies which the Plaintiff is entitled to by reason of its various contracts of insurance with the Defendants, in addition to Plaintiff's right to recover attorney's fees by reason of this action.

<div align="center">6.</div>

<div align="center">**JURY DEMAND**</div>

Plaintiff demands that this case be heard before a jury; and the Court's fee is being simultaneously deposited herewith for this jury demand.

WHEREFORE, Plaintiff prays that, after being duly served, the Defendants appear and answer herein and that upon final trial hereof, this Court enter a Declaratory Judgment that Plaintiff is entitled to complete indemnity from Defendants for all damages which may hereafter be assessed against the Plaintiff as a result of a final judgment against the Plaintiff by the various plaintiffs in the underlying lawsuits or as a result of any reasonable settlements hereinafter made by the Plaintiff in such litigation. Plaintiff further prays that it recover reasonable attorney's fees and reasonable costs incurred in connection with this action in addition to all and further relief which Plaintiff may be entitled to recover, either at law or in equity.

Respectfully submitted,

KOPPEL & ASSOCIATES, L.L.P.
312 East Van Buren
Post Office Box 2878
Harlingen, Texas 78551
Telephone No.: (956) 425-2000
Telecopier No.: (956) 421-4258

By: _____
Rollins M. Koppel
State Bar No. 11680000

CVisPDF – www.fasiio.com

CAUSE NO. 2001-05-002457-E

| | | |
|---|---|---|
| COASTAL ENGINEERING, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | CAMERON COUNTY, TEXAS |
| | § | |
| NATIONAL AMERICAN INSURANCE | § | |
| COMPANY, LIBERTY MUTUAL | § | |
| INSURANCE COMPANY, AND | § | |
| VALLEY FORGE INSURANCE | § | |
| COMPANY | § | 357TH JUDICIAL DISTRICT |

## ORIGINAL ANSWER OF DEFENDANT
## VALLEY FORGE INSURANCE COMPANY

Defendant, Valley Forge Insurance Company ("Valley Forge"), files its Original Answer to Plaintiff's Second Amended Original Petition and shows as follows:

### I.

### GENERAL DENIAL

As is its right pursuant to Rule 92 of the Texas Rules of Civil Procedure, Valley Forge generally denies each and every allegation of Plaintiff's Original Petition and demands strict proof thereof.

### II.

### RIGHT TO AMEND

Valley Forge reserves the right to amend this answer in accordance with the Texas Rules of Civil Procedure.

### III.

### PRAYER

For these reasons, Valley Forge Insurance Company prays that Plaintiff take nothing by its suit and that it recover its costs together with such other and further relief to which it may be justly entitled.

007140.00243:123804.01

Respectfully submitted,

_____
Paul J. Van Osselaer
Texas State Bar No. 20451500
Jill M. Cronin
Texas State Bar No. 00791797
HUGHES & LUCE, L.L.P.
111 Congress Avenue, Suite 900
Austin, TX 78701
Telephone:   (512) 482-6800
Telecopier:   (512) 482-6859

**ATTORNEYS FOR DEFENDANT
VALLEY FORGE INSURANCE
COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of the above and foregoing document has been served on all counsel of record via certified mail on this the 5th day of September, 2001.

_____
Jill M. Cronin

007140.00243 123804.01

CVisPDF – www.fastio.com

# CERTIFIED COPY

**PAGE: 01**

```
*   *   *   C L E R K ' S   E N T R I E S   *   *   *        2001-05-002457-E
```

00009104
HON. ROLLINS M. KOPPEL                                              05    24    01
P.O. BOX 2878
HARLINGEN TX      78551 0000

                                                        (10)                                    30.00

                                                        DAMAGES                      KOPPEL & ASSOC.

ING, INC.

URANCE COMPANY

| | |
|---|---|
| 05/24/01 | ORIGINAL PETITION FILED |
| 06/01/01 | PLTFS FIRST AMENDED ORIGINAL PETITION (LROD) |
| 06/01/01 | CITATION: NATIONAL AMERICAN INSURANCE COMPANY |
| 06/01/01 | SERVED: |
| 06/01/01 | CITATION: LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| 06/01/01 | SERVED: |
| 06/01/01 | CITATION: VALLEY FORGE INSURANCE COMPANY |
| 06/01/01 | SERVED: |
| 06/12/01 | TRANSFERRED FROM THE 197th COURT |
| 06/21/01 | JURY FEE: Pd. by HON. ROLLINS M. KOPPEL |
| 06/21/01 | PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION/GMEDRANO |
| 06/25/01 | CITATION: NATIONAL AMERICAN INSURANCE COMPANY |
| 06/25/01 | SERVED: |
| 06/25/01 | CITATION: LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| 06/25/01 | SERVED: |
| 06/25/01 | CITATION: VALLEY FORGE INSURANCE COMPANY |
| 06/25/01 | SERVED: |

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT, CAMERON COUNTY, TEXAS
BY _____ DEPUTY

DISTRICT COURT ★ CAMERON COUNTY TEXAS

# VIL DOCKET - JUDGE'S ENTRIES

## RULE 26-TRCP

CASE NO. 2001-05-002457-ℒℰ

| ATTORNEYS | KIND OF ACTION | DATE OF FILING | | |
|---|---|---|---|---|
| | | MONTH | DAY | YEAR |
| 00009104 | (10) | 05 | 24 | 01 |
| HON. ROLLINS M. KOPPEL | DAMAGES | | | |
| P.O. BOX 2878 | | JURY FEE $ | | |
| HARLINGEN TX    78551 0000 | | PAID BY | | |

ING, INC.

URANCE COMPANY

COURT'S DOCKET (Rule 26, TRCP)

Transferred to the 357th District Court order signed + entered. mj

CutePDF - www.tevio.com

CutePDF – www.fastio.com

## <u>LIST OF COUNSEL OF RECORD</u>

I.      Plaintiff, Coastal Engineering, Inc. is represented by the following:

      Mr. Rollins Koppel
      Koppel & Associates, L.L.P.
      312 East Van Buren Ave.
      P.O. Box 2878
      Harlingen, Texas 78551
      (956) 425-2000 (telephone)
      (956) 421-4258 (facsimile)

II.     Defendant, Valley Forge Insurance Company is represented by the following:
      Paul J. Van Osselaer
      Jill M. Cronin
      Hughes & Luce, L.L.P.
      111 Congress Avenue, Suite 900
      Austin, Texas 78701
      (512) 482-6800 (telephone)
      (512) 482-6859 (facsimile)

No other defendants have been served nor have they voluntarily filed answers in this matter.

Disclosure of Interested Parties007140.00243:123818 01